[No. S016614. Apr. 1, 1991.]

ROBERT ALAN TAPIA, Petitioner, v.
THE SUPERIOR COURT OF TULARE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Neal Pereira, Public Defender, Tim Bazar, Assistant Public Defender, and Hugo Loza for Petitioner.

John T. Philipsborn, Quin Denvir, Tito Gonzales, Michael E. Cantrall, Linda F. Robertson, Thomas Havlena, and Jean R. Sternberg as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Daniel O. Overoye, Assistant Attorney General, J. Robert Jibson, Ward Campbell and Karen L. Ziskind, Deputy Attorneys General, for Real Party in Interest.

Patricia Toole Castle, Deputy District Attorney (Kern), as Amicus Curiae for Real Party in Interest.

OPINION

PANELLI, J.—Proposition 115, the "Crime Victims Justice Reform Act," changed criminal law in several respects on June 6, 1990. We granted review to determine whether the measure's provisions should be applied to prosecutions of crimes committed before its effective date. We conclude that certain provisions addressing the conduct of trials, and certain other provisions changing the law to the benefit of defendants, may be applied to such prosecutions. The remainder of the measure's provisions may not.

FACTS

The People have accused petitioner Robert Alan Tapia of committing first degree murder with special circumstances on February 12, 1989. The prosecution is pending in the Superior Court of Tulare County. Voir dire has not yet commenced.

Proposition 115 took effect on June 6, 1990, the day after the voters approved the measure. Shortly thereafter, the superior court ruled that it would apply the measure's procedural provisions to the case before it and, accordingly, conduct voir dire under the new statute. The new voir dire statute provides that the court rather than the attorneys "shall conduct the examination of prospective jurors" and that the examination "shall be con-

ducted only in aid of the exercise of challenges for cause." (Prop. 115, § 7, codified as Code Civ. Proc., § 223.) Seeking to have the superior court's order vacated, Tapia petitioned the Court of Appeal for a writ of mandate. The Court of Appeal summarily denied relief. We granted review and directed issuance of an alternative writ. We also stayed proceedings in the superior court pending our decision.

## DISCUSSION

As stated, we granted review to determine whether the provisions of Proposition 115 should be applied to prosecutions of crimes committed before its effective date. To answer this question we must address two issues. The first is whether the presumption of prospectivity applies to this initiative. (See *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1206-1209 [246 Cal.Rptr. 629, 753 P.2d 585] (*Evangelatos*).) The second concerns the meaning of the terms "prospective" and "retrospective." We do not address any other issue concerning the applicability or validity of the measure's provisions.[1]

## I.

We may quickly dispose of the first issue. It is well settled that a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a clear indication that the electorate, or the Legislature, intended otherwise. (See *People* v. *Hayes* (1989) 49 Cal.3d 1260, 1274 [265 Cal.Rptr. 132, 783 P.2d 719]; *Evangelatos, supra,* 44 Cal.3d at pp. 1206-1209; *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159] (*Aetna Casualty*); *Jones* v. *Union Oil Co.* (1933) 218 Cal. 775, 777 [25 P.2d 5]; cf. *In re Estrada* (1965) 63 Cal.2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948].)[2] Both the text of Proposition 115 and the related ballot arguments are entirely silent on the question of retrospectivity. Thus, as to most of Proposition 115's provisions we see no reason to depart from the ordinary rule of construction that new statutes are intended to operate prospectively.[3]

---

[1] In *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336 [276 Cal.Rptr. 326, 801 P.2d 1077], we held that Proposition 115 did not violate the single-subject rule. (*Id.*, at pp. 346-349; see Cal. Const., art. II, § 8, subd. (d).) We also held that section 3 of Proposition 115, which purported to amend the state Constitution to require courts to construe certain of its provisions in a manner consistent with the federal Constitution, was invalid for failure to comply with the procedural requirements for constitutional revisions. (52 Cal.3d at pp. 349-356; see Cal. Const., art. XVIII, §§ 1, 2.)

[2] Various statutes codify this rule of interpretation. (See, e.g., Code Civ. Proc., § 3 ["No part of [this code] is retroactive, unless expressly so declared."]; Pen. Code, § 3 [same].)

[3] As we shall explain, other considerations affect the application of certain provisions which benefit defendants. (See pt. V.C., *post.*)

## II.

There remains the question of what the terms "prospective" and "retrospective" mean. Tapia argues that a law is being applied retrospectively if it is applied to the prosecution of a crime committed before the law's effective date. For some types of laws, the test which Tapia proposes is clearly appropriate. ■ Certainly a law is retrospective if it defines past conduct as a crime, increases the punishment for such conduct, or eliminates a defense to a criminal charge based on such conduct. Such a law, as applied to a past crime, "change[s] the legal consequences of an act completed before [the law's] effective date," namely the defendant's criminal behavior. (*Weaver* v. *Graham* (1981) 450 U.S. 24, 31 [67 L.Ed.2d 17, 24, 101 S.Ct. 960]; see also *People* v. *Weidert* (1985) 39 Cal.3d 836, 851 [218 Cal.Rptr. 57, 705 P.2d 380], quoting *Weaver* v. *Graham, supra*; cf. *Aetna Casualty, supra*, 30 Cal.2d at p. 394 [a law is retrospective if it changes "the legal effects of past events"].) Application of such a law to past crimes would also violate the constitutional rule against ex post facto legislation. (U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9.)

■ Tapia's proposed test is not appropriate, however, for laws which address the conduct of trials which have yet to take place, rather than criminal behavior which has already taken place. Even though applied to the prosecution of a crime committed before the law's effective date, a law addressing the conduct of trials still addresses conduct in the future. This is a principle that courts in this state have consistently recognized. Such a statute " 'is not made retroactive merely because it draws upon facts existing prior to its enactment . . . . [Instead,] [t]he effect of such statutes is actually prospective in nature since they relate to the procedure to be followed in the future." (*Strauch* v. *Superior Court* (1980) 107 Cal.App.3d 45, 49 [165 Cal.Rptr. 552], quoting *Olivas* v. *Weiner* (1954) 127 Cal.App.2d 597, 600-601 [274 P.2d 476].) For this reason, we have said that "it is a misnomer to designate [such statutes] as having retrospective effect." (*Morris* v. *Pacific Electric Ry. Co.* (1935) 2 Cal.2d 764, 768 [43 P.2d 276].)

We previously addressed this issue in *Estate of Patterson* (1909) 155 Cal. 626 [102 P. 941]. The case involved the proof of a will that was destroyed in the great San Francisco fire of 1906. The testatrix died later that year, unaware that her will was gone. In 1907, the Legislature amended the Civil Code to permit proof of a will " 'shown to have been . . . by public calamity destroyed in the lifetime of the testator, without his knowledge . . . .' " (*Estate of Patterson, supra*, 155 Cal. at p. 634, quoting former Code Civ. Proc., § 1339, added by Stats. 1907, ch. 100, § 1, p. 122.) Holding the new statute applicable, we stated that "[i]t is a mistake to characterize the amendment of section 1339 as a retrospective law. It relates wholly to what

shall be done upon the trial of the application for probate, the proof that must be furnished and the facts which must be established. It applies only to trials which take place after its enactment. It can have no effect whatever on previous trials or enactments. It is prospective only in its nature." (*Estate of Patterson, supra,* 155 Cal. at p. 638.)

Courts came to the same conclusion in subsequent decisions. In *Strauch* v. *Superior Court, supra,* 107 Cal.App.3d 45, the court held to be prospective a statute which imposed on plaintiffs in malpractice suits the requirement of filing a certificate of merit, even as applied to causes of action that accrued before the statute's effective date. The new statute operated prospectively because it did not "create a new cause of action or deprive a malpractice defendant of any defense on the merits or affect vested rights." (*Id.,* at p. 49.) Similarly, in *Andrus* v. *Municipal Court* (1983) 143 Cal.App.3d 1041 [192 Cal.Rptr. 341] (disapproved on other grounds in *Evangelatos, supra,* 44 Cal.3d at p. 1207, fn. 11), the court immediately applied a new statute eliminating the right to appeal from certain orders of the superior court denying extraordinary relief. Noting that "[r]etroactive is not an apt word, of course," the court found it "absurd" to "subscribe to the notion that the Legislature desired to postpone the demise of a procedural loophole . . . ." (*Andrus* v. *Municipal Court, supra,* at p. 1047.) Once again, the court in *Republic Corp.* v. *Superior Court* (1984) 160 Cal.App.3d 1253 [207 Cal.Rptr. 241] immediately applied a new, mandatory statute requiring dismissal for prolonged failure to prosecute and making the plaintiff's diligence irrelevant. The court observed that application of the new statute to a case filed before its enactment was not "retroactive" because the statute's effect was " 'actually prospective in nature . . . .' " (*Id.,* at p. 1257, quoting *Strauch* v. *Superior Court, supra,* 107 Cal.App.3d at pp. 48-49.)

From these cases, it is evident that a law governing the conduct of trials is being applied "prospectively" when it is applied to a trial occurring after the law's effective date, regardless of when the underlying crime was committed or the underlying cause of action arose. Tapia challenges this conclusion, arguing that we previously rejected it in *Aetna Casualty, supra,* 30 Cal.2d 388, in *Evangelatos, supra,* 44 Cal.3d 1188, and in *People* v. *Hayes, supra,* 49 Cal.3d 1260. Those opinions, however, do not support his argument. In each opinion, we refused to apply a statute so as to change the legal consequences of the parties' past conduct. In determining whether such statutes changed "the legal effects of past events" (*Aetna Casualty, supra,* 30 Cal.2d at p. 394) we sometimes used the terms "substantive" and "procedural." (*Id.,* at p. 395; *Evangelatos, supra,* 44 Cal.3d at p. 1226, fn. 26.) However, we also made it clear that it is the law's effect, not its form or label, which is important. (*Aetna Casualty, supra,* 30 Cal.2d at p. 394; *Evangelatos, supra,* 44 Cal.3d at pp. 1225-1226, fn. 26.)

In *Aetna Casualty, supra*, 30 Cal.2d 388, we annulled an award of the Industrial Accident Commission. The commission had erroneously applied a statute which increased the amount of compensation for disabilities in a case involving injuries which had occurred prior to the statute's effective date. Defending its award before this court, the commission argued that the statute in question "relate[d] solely to matters of procedure or remedy." (30 Cal.2d at p. 393.) We acknowledged both the rule articulated in *Estate of Patterson, supra*, 155 Cal. 626, and our previous observation that " 'it is a misnomer to designate [procedural changes] as having retrospective effect.' " (*Aetna Casualty, supra*, 30 Cal.2d at p. 394, quoting *Morris* v. *Pacific Electric Ry. Co., supra*, 2 Cal.2d at p. 768.) We offered the further explanation that "[i]n such cases the statutory changes are said to apply not because they constitute an exception to the general rule of statutory construction [i.e., the presumption of prospectivity], but because they are not in fact retroactive. There is then no problem as to whether the Legislature intended the changes to operate retroactively." (*Aetna, supra*, 30 Cal.2d at p. 394.) However, we did not apply this reasoning to the statute at issue because the statute was "substantive in its effect, and its operation would be retroactive, since it imposes a new or additional liability and substantially affects existing rights and obligations." (*Id.*, at p. 395.) The law in question increased employers' liability for industrial disabilities and, thus, changed the legal consequences of their past conduct.

We confronted a similar situation in *Evangelatos, supra*, 44 Cal.3d 1188. The initiative at issue in that case, Proposition 51, limited an individual tortfeasor's liability for noneconomic damages to his proportionate share of fault. Misconstruing the rule derived from *Estate of Patterson, supra*, 155 Cal. 626, several amici curiae contended that the measure should be applied retrospectively on the ground that it was "procedural" rather than "substantive." We rejected the argument because "retroactive application of Proposition 51 to preexisting causes of action would have a very definite substantive effect" on both plaintiffs and defendants. (*Evangelatos, supra*, 44 Cal.3d at pp. 1225-1226, fn. 26.) Like the law at issue in *Aetna Casualty, supra*, Proposition 51 changed the legal consequences of the parties' past conduct. Specifically, Proposition 51 reduced the amount of damages which a plaintiff could recover from a particular defendant and made it impossible for defendants to recover contribution for noneconomic damages.[4]

Thus, contrary to Tapia's argument, it is clear that neither *Aetna Casualty, supra*, nor *Evangelatos, supra*, repudiated the general rule that statutes

---

[4] While Proposition 51 also included procedural provisions, we did not in our opinion discuss a single such provision. Instead, our entire discussion was directed to Civil Code section 1431.2, the proportionate limitation on noneconomic damages, which we called "the heart of Proposition 51." (*Evangelatos, supra*, 44 Cal.3d at p. 1198, fn. 4.)

addressing the conduct of trials are prospective. Instead, in each case we held the rule inapplicable to statutes which changed the legal consequences of past conduct by imposing new or different liabilities based upon such conduct. (*Aetna Casualty, supra*, 30 Cal.2d at p. 395; *Evangelatos, supra*, 44 Cal.3d at p. 1226, fn. 26.)

Tapia also interprets our opinion in *People* v. *Hayes, supra*, 49 Cal.3d 1260, as supporting his position. It does not. In *Hayes* we considered the effect of Evidence Code section 795, which requires the exclusion of prehypnotic testimony unless certain statutory procedures were followed at the time of hypnosis. As in our previous cases, we began by reaffirming the presumption that new statutes operate prospectively and proceeded to determine what "prospective" operation meant in the case before us. We did not hold that the statute would apply, or not, based upon the date the alleged crime was committed. Instead, we looked to the date of the conduct regulated by the statute. Because the prehypnotic evidence in question predated the statute, we held that "[t]o invoke section 795 to exclude such evidence . . . would be tantamount to giving the statute retroactive effect." (*People* v. *Hayes, supra*, 49 Cal.3d at p. 1274.) The past conduct to which the statute attached legal consequences was the use of hypnosis; the date of the offense was irrelevant.

### III.

Tapia next argues that a definition of "retrospective law" originally formulated in *American States W. S. Co.* v. *Johnson* (1939) 31 Cal.App.2d 606, 613 [88 P.2d 770] (*American States*), encompasses—and thus prohibits—the application of a new law to the prosecution of crimes committed before the law's effective date. In *American States*, the Court of Appeal defined a retrospective law "[as] one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute." We repeated the *American States* formulation in *Evangelatos, supra*, 44 Cal.3d at page 1206, and in *Aetna Casualty, supra*, 30 Cal.2d at page 391. Based upon this formulation, Tapia argues that a law addressing the conduct of trials, such as the new voir dire provision, "affects [a] right[] . . . which . . . exist[ed] prior to the adoption of the statute," the right in question being the supposed right to have voir dire conducted under the law existing at the time of the offense.

As the foregoing examination of our opinions demonstrates, however, we have not invoked the *American States* formulation to justify such a result.[5]

---

[5] Nor does the opinion in *American States, supra,* justify such a result. The court in that case upheld the application of a new law increasing from 2 to 4 percent the tax rate on busi-

Tapia's argument appears to be an effort to incorporate into the definition of "retrospectivity" the now obsolete concept of "substantial protections." It was formerly held that a law violated the constitutional prohibition against ex post facto legislation if it eliminated a "substantial protection," whether substantive or procedural, existing at the time of the offense. However, the United States Supreme Court has repudiated that analysis. (*Collins* v. *Youngblood* (1990) __ U.S. __, __ [111 L.Ed.3d 30, 39, 110 S.Ct. 2715, 2719] (*Collins*).) Although we have employed the federal concept of "substantial protections" in deciding questions under the ex post facto clause (*People* v. *Smith* (1983) 34 Cal.3d 251, 260 [193 Cal.Rptr. 692, 667 P.2d 149]; *People* v. *Ward* (1958) 50 Cal.2d 702, 707 [328 P.2d 777, 76 A.L.R.2d 911]; see pt. IV, *post*), the concept has never formed a part of the definition of "retrospectivity" in the context of statutory construction.

## IV.

Finally, Tapia argues that our opinion in *People* v. *Smith, supra,* 34 Cal.3d 251 (*Smith*), dictates a contrary result. In *Smith* we held that the provisions of Proposition 8, the "Victims' Bill of Rights," would apply only to prosecutions of offenses committed after the measure's effective date. We did not distinguish between provisions which addressed the defendant's criminal behavior and provisions which addressed the conduct of trials.

The defendant in *Smith* was found guilty of robbery after the trial court denied his motion to suppress a confession. On appeal, defendant argued that his confession had been obtained in violation of the California Constitution. Proposition 8 took effect after we granted review and long after the defendant's crime and trial. One provision of that measure amended the California Constitution to provide that "relevant evidence shall not be excluded in any criminal proceeding." (Cal. Const., art. I, § 28, subd. (d).) We held that Proposition 8 could not be applied to validate the trial court's ruling, erroneous at the time it was made, denying the motion to suppress. Thus, the narrow question immediately before us in *Smith* was truly one of retrospectivity, that is, whether a new rule should be applied to change "the legal effects of past events." (*Aetna Casualty, supra,* 30 Cal.2d at p. 394; see also *Weaver* v. *Graham, supra,* 450 U.S. at pp. 30-31 [67 L.Ed.2d at pp. 24-25].)

In *Smith*, going beyond the facts of the case, we also held that Proposition 8 in its entirety would apply only to crimes committed after the measure's effective date. Because Proposition 115, like Proposition 8, includes

nesses' net income for the year 1935, as applied to a business which had already paid, prior to the law's effective date, a nominal tax for the privilege of doing business in 1935. (31 Cal.App.2d at pp. 608-609.)

various types of provisions, Tapia argues that we should follow the same approach in this case. However, the reasons supporting our decision in *Smith* do not dictate the same result in the case now before us.

The first reason we gave for our decision was that the *"primary* stated purpose of Proposition 8 [was] to deter the commission of crimes." (*Smith, supra,* 34 Cal.3d at p. 258, italics added.) Based on that purpose, we concluded that the electorate "must have intended the measure to apply only to offenses that *could* be deterred, i.e., that had not already been committed by the time Proposition 8 was adopted."[6] (*Smith, supra,* 34 Cal.3d at pp. 258-259, italics in original.) In contrast, the voters in adopting Proposition 115 expressly declared that their purposes were to reduce the unnecessary "costs of criminal cases" and to "create a system in which justice is swift and fair . . . ." (Prop. 115, § 1, subds. (b), (c).)[7] We can best effectuate this purpose by giving the earliest possible application to reforms designed to accelerate the adjudication of criminal cases.

The second reason we gave for our decision in *Smith* was the desire to avoid resolving doubts about the initiative's constitutionality arising from the rule against ex post facto legislation. (*Smith, supra,* 34 Cal.3d at p. 259.) In 1983, when we decided *Smith,* some authorities suggested that even procedural reforms might violate the rule against ex post facto legislation unless they left "untouched all the *substantial protections* with which existing law surround[ed] the person accused of crime" at the time the crime was committed. (*Thompson* v. *Utah* (1898) 170 U.S. 343, 352 [42 L.Ed. 1061, 1061, 18 S.Ct. 620], italics added; see *Smith, supra,* 34 Cal.3d at p. 260.) The vagueness inherent in the term "substantial protections," which the high court did not define, led us to observe that "[a]s to all but the most obvious examples of ex post facto legislation, . . . the general rule is that there is no general rule." (*Smith, supra,* 34 Cal.3d at p. 260.) For this reason, we concluded that case-by-case analysis of Proposition 8's provisions under the ex post facto clause was not practical.

The United States Supreme Court has greatly simplified ex post facto law since *Smith.* In *Collins, supra,* __ U.S. __ [111 L.Ed.2d 30, 110 S.Ct. 2715], the high court endorsed its earlier formulation of the law in *Calder* v. *Bull* (1798) 3 U.S. (3 Dall.) 386, 390 [1 L.Ed. 648, 650] (*Calder*), and *Beazell* v. *Ohio* (1925) 269 U.S. 167, 169-170 [70 L.Ed. 216, 217-218, 46 S.Ct. 68]

---

[6] While it is true that one cannot deter crimes which have already been committed, one may be able to deter future crimes by increasing the speed and certainty of conviction in pending cases.

[7] In further contrast to Proposition 8, Proposition 115 refers only once to the concept of deterrence: "We the people of the State of California hereby find that . . . the death penalty is a deterrent to murder . . . ." (Prop. 115, § 1, subd. (a).)

(*Beazell*), as "faithful to our best knowledge of the original understanding" of the ex post facto clause. (*Collins, supra,* __ U.S. at p. __ [111 L.Ed.2d at p. 39, 110 S.Ct. at p. 2719].) ■ Under that exclusive formulation, " 'any statute [1] which punishes as a crime an act previously committed, which was innocent when done; [2] which makes more burdensome the punishment for a crime, after its commission, or [3] which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto.* ' "[8] (*Collins, supra,* __ U.S. at p. __ [111 L.Ed.2d at p. 39, 110 S.Ct. at p. 2719], quoting *Beazell, supra,* 269 U.S. at pp. 169-170 [70 L.Ed. at p. 217].)

In *Collins* the Supreme Court also rejected the proposition that a law violates the ex post facto clause simply because it eliminates a "substantial protection" existing at the time an offense was committed.[9] According to the high court, references in its earlier cases "to 'substantial protections' and 'personal rights' should not be read to adopt without explanation an undefined enlargement of the [ex post facto clause]." (*Collins, supra,* __ U.S. at p. __ [111 L.Ed.2d at p. 41, 110 S.Ct. at p. 2721].) While the Legislature, or the electorate, cannot immunize a law from scrutiny under the ex post facto clause simply by labelling it "procedural," "the prohibition which may not be evaded is the one defined by the *Calder* categories." (*Ibid.* [111 L.Ed.2d at p. 41, 110 S.Ct. at p. 2721].)

Accordingly, the United States Supreme Court has resolved the analytical difficulty which led us to conclude in *Smith* that it would be impractical to consider ex post facto challenges to Proposition 8's provisions on a case-by-case basis. After *Collins,* we need not determine "how substantial is the

---

[8] In *Calder,* the Supreme Court also suggested, as a fourth category of ex post facto law, that a legislative act would be ex post facto if it "alters the *legal* rules of *evidence,* and receives less, or different, testimony, than the law required at the time of the commission of the offense, *in order to convict the offender.*" (*Calder, supra,* 3 U.S. at p. 390 [1 L.Ed. at p. 650, italics added; see *Collins, supra,* __ U.S. at p. __ [111 L.Ed.2d at p. 39, 110 S.Ct. at p. 2719].) However, "[a]s cases subsequent to *Calder* make clear, this language was not intended to prohibit the application of new evidentiary rules in trials for crimes committed before the changes." (*Collins, supra,* __ U.S. at p. __, fn. 3 [111 L.Ed.2d at p. 39, fn. 3, 110 S.Ct. at p. 2719, fn. 3].)

In *People* v. *Bradford* (1969) 70 Cal.2d 333 [74 Cal.Rptr. 726, 450 P.2d 46], we described the fourth *Calder* category as "dictum" and declined to give it literal effect. Relying on cases in which the high court had also declined to apply the fourth category (*Hopt* v. *Utah* (1884) 110 U.S. 574, 588-589 [28 L.Ed. 262, 268, 4 S.Ct. 202]; *Thompson* v. *Missouri* (1898) 171 U.S. 380, 386 [43 L.Ed. 204, 207, 18 S.Ct. 922]), we held it "unmistakably clear . . . that changes in the rules of evidence which broaden the class of persons competent to testify are not deemed ex post facto in operation." (*People* v. *Bradford, supra,* 70 Cal.2d at p. 344, fn. 5.)

[9] The high court overruled *Kring* v. *Missouri* (1883) 107 U.S. 221 [27 L.Ed. 506, 2 S.Ct. 443], and *Thompson* v. *Utah, supra,* 170 U.S. 343, which had been cited as support for the proposition. (*Collins, supra,* __ U.S. at pp. __-__ [111 L.Ed.2d at pp. 44-45, 110 S.Ct. at pp. 2723-2724].)

right that the statute impairs and how significant is that impairment." (*Smith, supra*, 34 Cal.3d at p. 260.) Instead, we can resolve such challenges by applying the exclusive *Calder* categories.

Lastly on this point, Tapia argues that we should perpetuate "substantial protection" analysis by adopting it as a matter of state law. We decline to do so. While we unquestionably have the power to interpret a provision of the state Constitution differently than its federal counterpart (Cal. Const., art. I, § 24), neither the language nor the history of the state ex post facto clause supports a different interpretation.

The language of the state and federal clauses is identical in relevant part: each declares that no "ex post facto law" shall be passed. (Cal. Const., art. I, § 9; U.S. Const., art. I, § 10, cl. 1.) The state clause was first proposed in the constitutional convention of 1849 as an amendment to a committee draft of article I, the "Declaration of Rights," apparently as an afterthought. (Rep. of the Debates in the Convention of California on the Formation of the State Constitution, in Sept. and Oct. 1849 (1850) at p. 43.) The record of the debates does not include any discussion of the amendment.[10] In 1879, the delegates to the second constitutional convention voted to preserve the language adopted in 1849, again without any recorded debate on its meaning.[11] In 1971, as part of an ongoing project of constitutional reform, the Constitution Revision Commission proposed to change the wording of the clause from the negative ("No . . . ex post facto law . . . shall ever be passed") to the positive ("A[n] . . . ex post facto law . . . may not be passed"). However, the commission did not propose any substantive change.[12] The voters approved the provision, as reworded, in the November 1974 General Election.

[10] As adopted, article I, section 16, of the Constitution of 1849 provided that: "No bill of attainder, ex post facto law, or law impairing the obligation of contracts, shall ever be passed."

According to the dissent, the delegates to the 1849 convention must have intended to adopt "substantial protection" analysis because it had already become a part of federal law. (Dis. opn. of Mosk, J., *post*, at pp. 308-309.) The dissent's argument is based on a misinterpretation of *United States* v. *Hall* (C.C.D. Pa. 1809) (No. 15,285) 26 F. Cas. 84, 86, which the high court corrected in *Collins*. (See *Collins, supra*, __ U.S. at p. __ [111 L.Ed.2d at p. 43, 110 S.Ct. at pp. 2722-2723].)

[11] The only recorded debate on article I, section 16, concerned a proposal to prohibit statutes of limitation, which the convention rejected. (1 Debates and Proceedings of the Constitutional Convention of the State of California Convened at the City of Sacramento, Saturday, Sept. 28, 1878 (1880) at p. 268.)

[12] We do not view the change in wording as significant. Part of the "task of the drafting committee [was] to rephrase [each article of the Constitution] in more modern, concise language and if necessary to organize it in a more logical framework." (Assem. Interim Com. on Constitutional Amendments, Special Rep. on Constitutional Revision: Rep. to the Legis., 1969 Reg. Sess. (1969) at p. 11.)

In. its report to the Legislature, the commission had only this comment on its proposal to amend article I, section 16, of the former Constitution (now article I, section 9): "An ex post

Nor does an independent meaning for the state ex post facto clause emerge from our own opinions. Although this court has often cited the state clause together with the federal, we have never given the state clause an independent interpretation or held, in any case, that the state clause required a different result than the federal clause. Moreover, nothing in our opinions supports the notion that "substantial protection" analysis has an independent footing in the state Constitution. The United States Supreme Court introduced "substantial protection" analysis in 1883 with its opinion in *Kring* v. *Missouri, supra*, 107 U.S. 221. California, however, was not quick to follow. It was not until 1930 that we cited *Kring* (*People* v. *Dawson* (1930) 210 Cal. 366, 368 [292 P. 267]), and not until 1958 that we clearly followed "substantial protection" analysis (*People* v. *Ward, supra*, 50 Cal.2d 702, 707) as the supremacy clause required us to do. (U.S. Const., art VI, cl. 2.)

Before *Kring*, this court's understanding of the rule against ex post facto laws was inconsistent with "substantial protection" analysis. Before us in *People* v. *Mortimer* (1873) 46 Cal. 114 was a new statute giving the prosecution, for the first time, the right to open and to close the argument to the jury in criminal cases. The issue was whether the trial court had erred by applying the statute to the trial of a crime committed before the statute's effective date. (*Id.*, at pp. 114, 116.) We considered the claim of error under Penal Code section 6,[13] which we said was "intended . . . to steer clear of any difficulty arising from the enactment of *ex post facto* laws, which are prohibited by the Constitution of the United States. But laws changing the mere forms of procedure in a criminal action" do not fall within the ex post facto clause's prohibition. (46 Cal.3d at p. 118.) We also stated that "[i]t is clear . . . that no constitutional difficulty would be encountered in requiring past offenses to be tried under new forms of procedure . . . ." (*Ibid.*) We did not even cite the state Constitution, let alone suggest that it dictated a different result or required us to consider whether the particular procedural law in question eliminated a "substantial protection." As already mentioned, we would not clearly follow "substantial protection" analysis for another 75 years. (See *People* v. *Ward, supra*, 50 Cal.2d at p. 707.)

As the high court's recent opinion in *Collins, supra*, __ U.S. __ [111 L.Ed.2d 30, 110 S.Ct. 2715], demonstrates, our apparent reluctance to

---

facto law is one which retroactively affects legal relationships. . . . The application of these classic prohibitions [against bills of attainder, ex post facto laws, and law impairing the obligation of contracts] in changing fact situations is a source of chronic litigation. The Commission recommends that they be retained." (Cal. Const. Revision Com., Proposed Revision of the Cal. Const., pt. 5 (1971) at p. 27.)

[13] Penal Code section 6 provides, in relevant part, that "[a]ny act or omission commenced prior to [January 1, 1873, the date on which the Penal Code took effect] may be inquired of, prosecuted, and punished in the same manner as if this code had not been passed."

employ "substantial protection" analysis was justified. Federal law had compelled us to follow that analysis, since we were never free to adopt an ex post facto rule less favorable to the defense than the federal rule.[14] After *Collins*, there is no reason not to return to the original understanding of the scope of the rule against ex post facto laws expressed in both federal and state Constitutions.

The third reason we gave for our decision in *Smith* was the desire to "avoid a number of practical consequences adverse to the administration of justice and the right of fair trial." (*Smith, supra*, 34 Cal.3d at p. 262.) As we have already discussed, the intervening simplification of ex post facto law eliminates the major administrative difficulty that we foresaw in *Smith*. Although we cannot altogether avoid further litigation concerning Proposition 115's application in particular cases, we must weigh that administrative burden against the substantial benefits that immediate application of the measure offers by reducing time spent in voir dire and preliminary hearings, among other things. On balance, considerations of administrative efficiency, as well as the electorate's stated goals of reducing delay and unnecessary cost, favor giving Proposition 115 the earliest possible application.

## V.

It remains to be determined which of Proposition 115's provisions may and may not be applied to the prosecution of crimes committed before the measure's effective date. The provisions fall into four categories: (A) provisions which change the legal consequences of criminal behavior to the detriment of defendants; (B) provisions which address the conduct of trials; (C) provisions which clearly benefit defendants; and (D) a single provision which codifies existing law.

## A.

The first category of provisions, those which change the legal consequences of criminal behavior to the detriment of defendants, cannot be applied to crimes committed before the measure's effective date. These

---

[14]Although we cited the California Constitution in *People* v. *Smith, supra*, 34 Cal.3d at page 259, we did not give it a different interpretation than the federal Constitution; we discussed the two ex post facto clauses as if they were one and the same. To support the proposition that ex post facto principles prohibited the " '[a]lteration of a substantial right,' " we cited only *Weaver* v. *Graham, supra*, 450 U.S. at pages 29-31 [67 L.Ed.2d at pp. 23-24]. *Smith* can be read as suggesting that our opinion in *People* v. *Ward, supra*, [50 Cal.2d 702] foreshadowed the high court's own rulings. (See *Smith, supra*, 34 Cal.3d at p. 260.) But the truth is that we had in *Ward* merely followed the now overruled *Thompson* v. *Utah, supra*, 170 U.S. 343 (see *People* v. *Ward, supra*, 50 Cal.2d at p. 707), as the supremacy clause required. (U.S. Const., art. VI, cl. 2.)

provisions include section 9[15] (amending Pen. Code, § 189), which adds crimes to the list of felonies supporting a conviction of first degree murder; those portions of section 10 (amending Pen. Code, § 190.2) which add new special circumstances; that portion of section 10 (codified at Pen. Code, § 190.2, subd. (d)), which provides that an accomplice, for a felony-murder special circumstance to be found true, must have been a major participant and have acted with reckless indifference to human life;[16] section 11 (adding Pen. Code, § 190.41), which provides that the corpus delicti of a felony-based special circumstance need not be proved independently of the defendant's extrajudicial statement; section 12 (amending Pen. Code, § 190.5), which subjects persons between the ages of 16 and 18 to the penalty of life without possibility of parole for first degree murder with special circumstances; sections 13 and 14 (adding Pen. Code, §§ 206 and 206.1), which define the new crime of torture; and section 26 (adding Pen. Code, § 1385.1), which precludes a judge from striking a special circumstance that has been admitted or found to be true.

Application of these provisions to crimes committed before the measure's effective date would be "retrospective" because each would change the legal consequences of the defendant's past conduct. (*Weaver* v. *Graham, supra,* 450 U.S. at p. 31 [67 L.Ed.2d at p. 24]; see also *People* v. *Weidert, supra,* 39 Cal.3d at p. 851, quoting *Weaver* v. *Graham*; cf. *Aetna Casualty, supra,* 30 Cal.2d at p. 394.) Such application would also likely violate the rule against ex post facto legislation, since each of these provisions appears to define conduct as a crime, to increase punishment for a crime, or to eliminate a defense.[17] (*Collins, supra,* __ U.S. at p. __ [111 L.Ed.2d at p. 39, 110 S.Ct.

---

[15] All undesignated section references are to Proposition 115.

[16] This subdivision brings state law into conformity with *Tison* v. *Arizona* (1987) 481 U.S. 137, 158 [95 L.Ed.2d 127, 144-145, 107 S.Ct. 1676], and, thus, changes state law to the detriment of defendants. (Compare *ibid.* with *People* v. *Anderson* (1987) 43 Cal.3d 1104, 1147 [240 Cal.Rptr. 585, 742 P.2d 1306].)

[17] This conclusion is obvious as to most of the enumerated provisions but requires further explanation as to sections 11 and 26.

Section 11 (adding Pen. Code, § 190.41), provides that "the corpus delicti of a felony-based special circumstance . . . need not be proved independently of a defendant's extra-judicial statement." Although the electorate or the Legislature may, in general, change the rules of evidence without violating the rule against ex post facto laws (*Collins, supra,* __ U.S. at p. __, fn. 3 [111 L.Ed.2d at p. 39, 110 S.Ct. at p. 2719, fn. 3]), they may not "alter the degree, or lessen the amount or measure of the proof which was made necessary to convictions when the crime was committed." (*Hopt* v. *Utah, supra,* 110 U.S. at pp. 588-599 [28 L.Ed. at p. 268].) Laws which have such an effect are analogous to laws which change the definition of offenses.

Section 26 (adding Pen. Code, § 1385.1) provides that "a judge shall not strike or dismiss any special circumstance which is admitted by a plea of guilty or nolo contendere or is found by a jury or court . . . ." This section appears to be a direct response to our opinion in *People* v. *Williams* (1981) 30 Cal.3d 470 [179 Cal.Rptr. 443, 637 P.2d 1029], in which we held that a trial court had power to dismiss a special circumstance finding "in furtherance of jus-

at p. 2719].) Accordingly, these provisions may only be applied to prosecutions of crimes committed on or after June 6, 1990.

## B.

■ Other provisions of Proposition 115 address the conduct of trials rather than the definition of, punishment for, or defenses to crimes. These provisions include section 2 (adding Cal. Const., art. I, § 14.1), which eliminates postindictment preliminary hearings; section 4 (adding Cal. Const., art. I, § 29), which gives the People the right to due process and a speedy trial; section 5 (adding Cal. Const., art. I, § 30), which provides that the Constitution shall not be construed to prohibit joinder, makes hearsay evidence admissible at preliminary hearings, and makes discovery reciprocal; sections 6, 7, and 7.5 (repealing Code Civ. Proc., §§ 223 and 223.5, and adding a new Code Civ. Proc., § 223), which reform voir dire; sections 8, 15, 16, 17, and 18 (adding Evid. Code, § 1203.1, amending Pen. Code, §§ 859, 866, and 872, and adding Pen. Code, § 871.6), which reform preliminary hearing procedures; section 19 (adding Pen. Code, § 954.1), which provides that the absence of cross-admissibility is not a ground for severance; section 20 (adding Pen. Code, § 987.05), which requires appointment of counsel who is ready to proceed; section 21 (adding Pen. Code, § 1049.5), which provides that felony trials shall take place within 60 days of arraignment; section 22 (adding Pen. Code, § 1050.1), which authorizes continuances to maintain joinder; sections 23, 24, 25, and 27 (adding Pen. Code, §§ 1054 to 1054.7, and repealing Pen. Code, §§ 1102.5, 1102.7, and 1430), which reform discovery procedures and provide for reciprocal discovery; and section 28 (adding Pen. Code, § 1511), which provides for appellate review of trial dates and continuances.

Tapia has advanced several arguments in an effort to show that application of such provisions in his case, even though addressed on their face to the conduct of future trials and not to past criminal behavior, will nevertheless be "retrospective" as applied to him. First, he argues that the new voir dire provisions will limit his counsel's ability to explore potential jurors' exposure to pretrial publicity. If counsel had known of the new rule, to complete the argument, he might have sought an earlier ruling on a motion to change venue rather than waiting for the results of voir dire. The flaw in this argument is the premise. There is no reason to believe that the new voir dire rules will be applied to deprive Tapia's counsel of any information to which voir dire is legitimately directed. Under the new provisions, "the court may permit the parties, upon a showing of good cause, to supplement the examination by such further inquiry as it deems proper, or shall itself

tice" in order to modify a sentence of life imprisonment without the possibility of parole. In light of this history, section 26 could arguably be said to increase the punishment for crime.

submit to the prospective jurors upon such a showing, such additional questions by the parties as it deems proper." (§ 7, codified as Code Civ. Proc., § 223.)

Next, Tapia argues that the new provisions for reciprocal discovery would be retrospective as applied to him because his counsel has conducted his investigation based upon the assumption that discovery would not be reciprocal. In this case the objection is purely hypothetical because the prosecutor has informed the trial court that he does not intend to utilize the reciprocal discovery provisions. All parties and amici curiae, however, have stressed the importance of an early resolution of issues concerning Proposition 115's application and have asked us to address such issues in this case.

Application of the discovery provisions to compel production of evidence obtained by defense counsel before Proposition 115's effective date would be retroactive under the principles we have already discussed. This is because counsel can only be guided, while conducting an investigation, by the discovery rules then in force. In contrast, the date on which the crime was committed has no bearing on the discoverability of the results of counsel's investigation. Discovery rules address trial preparation, not criminal behavior. Trial courts are able to determine, in camera if necessary, whether particular evidence claimed to be subject to discovery was obtained before or after Proposition 115's effective date.

Finally, Tapia argues that counsel might not have permitted the trial to be continued if counsel had known that to do so would have required him to defend the case under the new provisions which Proposition 115 introduced. In this way, to complete the argument, the new provisions change the legal consequences of counsel's past conduct. In our view, this argument does not demonstrate that the new provisions are retrospective. In view of the many reasons that can affect the decision to seek a continuance, to say that any such decision was motivated by reliance on the state of the law unaffected by Proposition 115 is speculative in the extreme. Moreover, it has always been understood in this state that the rules governing the conduct of trials are subject to change by the Legislature, or the electorate, insofar as the Constitution permits. (*People* v. *Mortimer, supra,* 46 Cal. at pp. 118-119.)

Accordingly, the provisions enumerated above may be applied to pending cases regardless of when the charged offense is alleged to have occurred.

## C.

The third category of new provisions consists of those which clearly benefit only defendants. Each of these provisions is contained in section 10.

Specifically, the section provides that the killing of a prosecutor or judge, to constitute a special circumstance, must be intentional. (§ 10, codified at Pen. Code, § 190.2, subd. (a)(11), (12).) The section also provides that an accomplice, for a non-felony-murder special circumstance to be found true, must have had the intent to kill. (§ 10, codified at Pen. Code, § 190.2, subd. (c).)

Application of these provisions to trials of crimes committed before Proposition 115's operative date may change the legal consequences of a defendant's criminal conduct. Such application is permissible, however, because the provisions favor defendants. Although we usually presume that new statutes are intended to operate prospectively, that presumption "is not a straitjacket." (*In re Estrada, supra,* 63 Cal.2d at p. 746.) In past cases we have not applied the presumption to statutes changing the law to the benefit of defendants. Instead, we have assumed that "[w]hen the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act" and " 'sufficient to meet the legitimate ends of the criminal law.' " (*Id.,* at p. 745, quoting *People* v. *Oliver* (1956) 1 N.Y.2d 152 [151 N.Y.S.2d 367, 134 N.E.2d 197, 201-202].) ■ ■ ■ ■ We have applied the same reasoning to statutes which redefine, to the benefit of defendants, conduct subject to criminal sanctions. (*People* v. *Rossi* (1976) 18 Cal.3d 295 [134 Cal.Rptr. 64, 555 P.2d 1313].)[18] These authorities compel the conclusion that the provisions listed above may be applied to pending cases.

## D.

■ Finally, section 10 also codifies the rule of *People* v. *Anderson, supra,* 43 Cal.3d 1104, to the effect that an actual killer, for a special circumstance to be found true, need not have had the intent to kill unless the applicable special circumstance specifically so requires. (§ 10, codified at Pen. Code, § 190.2, subd. (b); see *People* v. *Anderson, supra,* at p. 1147, overruling *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862]; see also *People* v. *Hendricks* (1987) 43 Cal.3d 584, 596, fn. 3 [238 Cal.Rptr. 66, 737 P.2d 1350].) This provision, which does not change

---

[18] We have not interpreted Penal Code section 3 to require a different conclusion because that section simply embodies the general, common law presumption that new statutes operate prospectively. (*In re Estrada, supra,* 63 Cal.2d at p. 746; cf. *Evangelatos, supra,* 44 Cal.3d at pp. 1207-1208.) It is also a " 'universal common-law rule that when the legislature repeals a criminal statute or otherwise removes the State's condemnation from conduct that was formerly deemed criminal,' " such legislation is presumed to apply to pending cases. (*People* v. *Rossi, supra,* 18 Cal.3d at p. 304, quoting *Bell* v. *Maryland* (1964) 378 U.S. 226, 230 [12 L.Ed.2d 822, 826, 84 S.Ct. 1814].)

existing law, may be applied to crimes committed before Proposition 115's effective date.

## DISPOSITION

The alternative writ is discharged. The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Kennard, J., Arabian, J., and Baxter, J., concurred.

**MOSK, J.**—I dissent.

The issue on review is "whether the provisions of Proposition 115 should be applied to prosecutions of crimes committed before its effective date."

Although it may be difficult to discern from the majority opinion, the primary and indeed dispositive question is what did the electorate intend in this regard. The presumption here—long settled in both statutory and decisional law—is that the voters determined that the measure in its entirety would apply prospectively, specifically, only to offenses occurring on or after its effective date. Since the voters did not speak on the subject, that presumption remains unrebutted.

It is simply inconceivable that the electorate could have been as subtle and indeed perverse as the majority suggest—that the voters could have intended that certain specific sections and clauses and phrases and words would apply prospectively, and that others would not.

Manifestly, the intent that appears in the majority opinion is not that of the electorate—but only that of the majority.

The majority compound their error by a continuing, callous lack of concern for the rule of article II, section 8, subdivision (d), of the California Constitution. That provision prohibits initiative measures—such as Proposition 115—from embracing more than one subject. In our sister states, the single-subject rule is not a dead letter. (Cf. *Porten Sullivan Corp.* v. *State* (1990) 318 Md. 387, 403-409 [568 A.2d 1111] [sustaining a single-subject challenge to a statute]; *Brookfield* v. *Milw. Sewerage* (1988) 144 Wis.2d 896, 921-922 [426 N.W.2d. 591] [same].) Regrettably, it *is* here.

Perhaps unwittingly, however, the majority belatedly confirm the view I expressed in dissent in *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336 [276 Cal.Rptr. 326, 801 P.2d 1077]—that Proposition 115 does in fact violate the single-subject rule. Indeed, they now all but expressly concede the point, as

their distinction of individual provisions within larger groups within still broader categories plainly reveals. To hold, as a majority of this court did in *Raven*, that such a "grabbag" measure comprises one subject strains credulity and makes a mockery of the constitutional prohibition. By now recognizing the multitudinous and discrete parts and subparts and sub-subparts of the measure, the majority here impliedly admit that *Raven*'s rejection of the single-subject challenge was erroneous. In the interest of candor, they should do so explicitly. The words of the aphorism quoted by Justice Rutledge in his dissent in *Wolf* v. *Colorado* (1949) 338 U.S. 25, 47 [93 L.Ed. 1782, 1795, 69 S.Ct. 1359], are appropriate: "Wisdom too often never comes, and so one ought not to reject it merely because it comes late."

## I

Petitioner, Robert Alan Tapia, stands accused in the Tulare Superior Court of having committed certain crimes on February 12, 1989, including first degree murder under special circumstances.

At the June 5, 1990, Primary Election, the voters approved an initiative constitutional amendment and statute that was designated on the ballot as Proposition 115—the self-styled "Crime Victims Justice Reform Act." On June 6 the measure purportedly became effective. (See Cal. Const., art. II, § 10, subd. (a) [statutory provisions]; *id*., art. XVIII, § 4 [constitutional provisions].)

Subsequently, Tapia moved the superior court for an order that Proposition 115 was not applicable in his case. He argued that the measure operated prospectively, specifically, only to crimes committed on or after its effective date. He addressed Proposition 115 as a whole. He also focused on certain specific sections, which relate to voir dire and reciprocal discovery. Section 6 of Proposition 115 repeals former Code of Civil Procedure section 223 (Stats. 1988, ch. 1245, § 2, No. 11 West's Cal. Legis. Service, p. 3153 [No. 5 Deering's Adv. Legis. Service, p. 4674]), which granted the parties the right to conduct voir dire. Section 7 adds a new Code of Civil Procedure section 223, which deprives the parties of that right. Sections 5, 15, 23, 24, 25, and 27 deal in whole or in part, directly or indirectly, with the separate subject of reciprocal discovery. The People responded to the motion. Their argument was directed solely to the voir dire provisions. They later represented that they would not invoke the reciprocal discovery provisions. The superior court denied the motion, ruling that Proposition 115 was applicable in its entirety, including specifically the provisions relating to voir dire.

Thereafter, Tapia submitted to the Fifth District Court of Appeal a petition for writ of mandate and/or prohibition against Proposition 115

with a request for a stay. Its grounds included, among others, the prospectivity claim presented to the superior court. The Court of Appeal summarily denied relief solely on the procedural ground that this court was the appropriate forum.

Coming here, Tapia sought review and a stay of proceedings in the superior court pendente lite. We stayed the proceedings as prayed. Shortly thereafter, we granted review as to "whether the provisions of Proposition 115 should be applied to prosecutions of crimes committed before its effective date." We then caused an alternative writ of mandate to issue.

## II

After careful consideration, I would resolve the issue on review in the negative and award Tapia the relief he seeks. To properly explain my reasons, I must first set out the pertinent legal and factual background.

There is a long-standing presumption in California—and generally (see *United States* v. *Security Industrial Bank* (1982) 459 U.S. 70, 79-80 [74 L.Ed.2d 235, 243-244, 103 S.Ct. 407])—that new nondecisional law operates prospectively. (See generally *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1205-1209 [246 Cal.Rptr. 629, 753 P.2d 585], and cases cited therein, including *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159] (hereafter sometimes *Aetna Casualty*); *People* v. *Hayes* (1989) 49 Cal.3d 1260, 1274 [265 Cal.Rptr. 132, 783 P.2d 719]; 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, §§ 495-496, pp. 685-690 (hereafter 7 Witkin); see also, e.g., Pen. Code, § 3 [stating that "No part of" Penal Code "is retroactive, unless expressly so declared."]; Code Civ. Proc., § 3 [stating same as to Code of Civil Procedure—which, as its name indicates, deals with *procedure*].)

"Prospective operation" means that the measure in question applies only to conduct that occurs, or conditions that arise, on or after its effective date. (See, e.g., *Evangelatos* v. *Superior Court, supra,* 44 Cal.3d at p. 1206; *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d at p. 391; *Russell* v. *Superior Court* (1986) 185 Cal.App.3d 810, 814 [230 Cal.Rptr. 102]; see also *People* v. *Hayes, supra,* 49 Cal.3d at p. 1274.) By contrast, "retroactivity" implicates such prior conduct or conditions in some significant way. (See, e.g., *Evangelatos* v. *Superior Court, supra,* 44 Cal.3d at p. 1206; *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d at p. 391; *Russell* v. *Superior Court, supra,* 185 Cal.App.3d at p. 814; see also *People* v. *Hayes, supra,* 49 Cal.3d at p. 1274.)

The presumption of prospectivity is not narrowly cabined by constitutional concerns about ex post facto effects, but is broadly based on policy

considerations involving fairness. (See *Russell* v. *Superior Court, supra*, 185 Cal.App.3d at p. 814 ["Retroactive laws are generally disfavored because the parties affected have no notice of the new law affecting past conduct. '[S]uch laws disturb feelings of security in past transactions.'"]; see also *Calder* v. *Bull* (1798) 3 U.S. (3 Dall.) 386, 390 [1 L.Ed. 648, 650] (lead opn. of Chase, J.) ["Every *ex post facto* law must necessarily be retrospective; but every retrospective law is not an *ex post facto* law . . . ."].) This proposition is firmly established. Otherwise, untenable results would follow. For example, prospectivity would be reducible to the ex post facto prohibition—and would therefore be nothing in itself. Also, prospectivity could not be "presumed" but would in fact be mandated as a result of constitutional compulsion.

The presumption arises whether the law is constitutional (see, e.g., *Willcox* v. *Edwards* (1912) 162 Cal. 455, 460 [123 P. 276]) or statutory (see, e.g., *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra*, 30 Cal.2d at p. 393), and whether the lawgiver is the people (see, e.g., *Evangelatos* v. *Superior Court, supra*, 44 Cal.3d at pp. 1205-1209) or their representatives (see, e.g., *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra*, 30 Cal.2d at p. 393).

The presumption extends to procedural law as well as substantive. (E.g., *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra*, 30 Cal.2d at pp. 393-394; *Russell* v. *Superior Court, supra*, 185 Cal.App.3d at p. 815; 7 Witkin, *supra*, Constitutional Law, § 495, at p. 686; see, e.g., *Evangelatos* v. *Superior Court, supra*, 44 Cal.3d at pp. 1205-1206.) This is because both procedure and substance can implicate considerations of fairness. (See *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra*, 30 Cal.2d at pp. 393-394; *Russell* v. *Superior Court, supra*, 185 Cal.App.3d at pp. 814-815.) Moreover, the presumption is not automatically satisfied whenever a procedural law is applied to proceedings on or after its effective date. (See, e.g., *People* v. *Hayes, supra*, 49 Cal.3d at p. 1274; *Evangelatos* v. *Superior Court, supra*, 44 Cal.3d at pp. 1205-1206; *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra*, 30 Cal.2d at pp. 393-394.) Such application in futuro may nevertheless affect conduct or conditions in the past. (See, e.g., *People* v. *Hayes, supra*, 49 Cal.3d at p. 1274; *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra*, 30 Cal.2d at p. 394.)

The presumption, of course, is not irrebuttable. But "in the absence of an express retroactivity provision, a [law] will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature or the voters must have intended a retroactive application." (*Evangelatos* v. *Superior Court, supra*, 44 Cal.3d at p. 1209; accord, *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra*, 30 Cal.2d at p. 393 [stating that "statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent"].)

At the June 8, 1982, Primary Election, the voters approved an initiative constitutional amendment and statute that was designated on the ballot as Proposition 8—the self-styled "Victims' Bill of Rights." On June 9 the measure purportedly became effective. (See Cal. Const., art. II, § 10, subd. (a) [statutory provisions]; *id.*, art. XVIII, § 4 [constitutional provisions].) Proposition 8 was a complex enactment containing several provisions, some substantive, some procedural, and some both.

In *People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149] (hereafter sometimes *Smith*), we held that Proposition 8 applied prospectively, specifically, only to crimes committed on or after its effective date.

Our first reason was to effectuate the intent of the voters insofar as it could be ascertained. "[T]he primary stated purpose of Proposition 8 is to deter the commission of crimes." (34 Cal.3d at p. 258.) "It is obvious that no such reform, no matter how effective, can deter criminal behavior or avert disruption of life if that behavior or disruption has already taken place . . . . Accordingly, by declaring the purpose of Proposition 8 to be the deterrence of crime the voters must have intended the measure to apply only to offenses that *could* be deterred, i.e., that had not already been committed by the time Proposition 8 was adopted." (*Id.* at pp. 258-259, italics in original.)

Our second—and clearly dispositive—reason was to interpret Proposition 8 in such a way as to avoid doubts as to its constitutionality under the ex post facto clause of the state charter.

"In the present context, the potential constitutional defect in Proposition 8 is that if construed to apply to crimes committed before its adoption, it may amount to an ex post facto law. Our state Constitution, upon which we rely, prohibits such laws. (Cal. Const., art. I, § 9.) The general guidelines for enforcing the ex post facto prohibition are well known, but its specific applications may present difficult questions." (34 Cal.3d at p. 259.)

"Beyond [the] two manifest constraints [against criminalizing an act that was innocent when done and increasing punishment for a crime after its commission], the picture is much less clear." (34 Cal.3d at p. 259.)

"As to all but the most obvious examples of ex post facto legislation, . . . the general rule is that there is no general rule. Each new statute challenged on this ground must be individually weighed in the constitutional scales, in the context of a specific case, and the outcome will often depend on matters of degree . . . .

"This task is difficult enough to perform with consistency when, as usually occurs, the Legislature adopts one statute at a time or a multisection act that is either all 'substantive' or all 'procedural.' It is even more problematic when the legislation is a seemingly random mixture of provisions of both kinds. Viewed functionally, Proposition 8 is such a composite." (34 Cal.3d at p. 260.)

"To avert . . . uncertainties, to minimize multiplicity of litigation, to forestall inconsistency of results in the inevitable close cases, and in general to avoid doubts as to the constitutionality of this measure under the ex post facto clause, we construe Proposition 8 to apply only to criminal proceedings arising out of offenses committed on or after the date it took effect." (34 Cal.3d at p. 262.)

Our third and final reason was simply to draw a line that would "avoid a number of practical consequences adverse to the administration of justice and the right of fair trial." (34 Cal.3d at p. 262.)

Next, in *Evangelatos* v. *Superior Court, supra*, 44 Cal.3d 1188, 1205-1209, we reaffirmed the presumption of prospectivity "on an elaborate review of the case law." (7 Witkin, *supra*, Constitutional Law, § 496, at p. 688.)

Subsequently, the drafters of what would become Proposition 115 set out to do their work. They comprised "50 prosecutors." (Ballot Pamp., Proposed Stats. and Amends. to Cal. Const. with arguments to voters, Primary Elec. (June 5, 1990), rebuttal to argument against Prop. 115, p. 35, "prosecutors" emphasized in original.)

Finally, as noted, at the June 5, 1990, Primary Election the voters approved Proposition 115.

I turn now to the issue on review, viz., "whether the provisions of Proposition 115 should be applied to prosecutions of crimes committed before its effective date." Considering that question against the legal and factual background set out above, I believe that the answer must be negative.

To begin with, *People* v. *Smith, supra*, 34 Cal.3d 251, is controlling. As stated, Proposition 8—the so-called "Victims' Bill of Rights"—was a complex measure containing several provisions, some substantive, some procedural, and some both. Proposition 115—the so-called "Crime Victims Justice Reform Act"—is an even more complex measure containing more than three times as many provisions, many substantive, many procedural, and many both. In *Smith*, we concluded that Proposition 8 applied only to crimes committed on or after its effective date. In this case, under the

authority of *Smith*, we should come to the same conclusion as to Proposition 115. Certainly, in *Raven* v. *Deukmejian, supra*, 52 Cal.3d at pages 346 to 349, a majority of this court held that Proposition 8 and Proposition 115 were virtually indistinguishable—at least for purposes of single-subject review. Consistency would seem to require them to adopt a similar interpretation on the issue before us. But no, they are of a contrary view this time.

Curiously, the majority now claim in substance that *Smith* is not controlling because its reasoning is not applicable.

Specifically, the majority assert that *Smith*'s "intent" ground is absent because "the primary stated purpose" of Proposition 115 is *not* "to deter the commission of crimes." (*People* v. *Smith, supra*, 34 Cal.3d at p. 258.) But clearly, one of the primary purposes of the measure is such. As declared in subdivision (c) of section 1 of Proposition 115, among the express "goals of the people in enacting this measure" was "to create a system . . . in which society as a whole can be free from the fear of crime in our homes, neighborhoods, and schools." Whether or not deterrence was *"the* primary *stated* purpose" (*People* v. *Smith, supra*, 34 Cal.3d at p. 258, italics added) seems of no consequence here.

The majority next assert that *Smith*'s "constitutional construction" ground is absent because—on June 21, 1990, more than two weeks *after* Proposition 115 was approved—the law under the ex post facto clause was simplified by the United States Supreme Court in *Collins* v. *Youngblood* (1990) __ U.S. __ [111 L.Ed.2d 30, 110 S.Ct. 2715] (hereafter *Youngblood*).

In *Youngblood*, I acknowledge, the court did indeed simplify the law under the ex post facto clause *of the United States Constitution.* (U.S. Const., art. I, § 10, cl. 1.) It generally repudiated the 19th-century interpretation of the provision—the ultimate source of "the general rule . . . that there is no general rule" (*People* v. *Smith, supra*, 34 Cal.3d at p. 260)—which traces its roots to the beginning of that century, if not before. (See *United States* v. *Hall* (C.C.D.Pa. 1809) (No. 15,285) 26 F. Cas. 84, 86, affd. (1810) 10 U.S. (6 Cranch) 171 [3 L.Ed. 189] ["An ex post facto law is one . . . which, in relation to the offence, or its consequences, alters the situation of a party, to his disadvantage."]; see also *Calder* v. *Bull, supra*, 3 U.S. (3 Dall.) at p. 391 [1 L.Ed. at p. 650] (lead opn. of Chase, J.) [Ex post facto laws are "those that create or aggravate the crime; or increase the punishment, *or change the rules of evidence, for the purpose of conviction.*" (Italics added.)].) In addition, it overruled two of its own decisions that reflected that interpretation, *Kring* v. *Missouri* (1883) 107 U.S. 221 [27 L.Ed. 506, 2

S.Ct. 443], and *Thompson* v. *Utah* (1898) 170 U.S. 343 [42 L.Ed. 1061, 18 S.Ct. 620].

But in *Smith*—contrary to the majority's implication—we were simply *not* concerned with the ex post facto clause of the United States Constitution. Rather, we expressly relied on the ex post facto clause *of the California Constitution* (Cal. Const., art. I, § 9)—and on that clause alone. (See *People* v. *Smith, supra*, 34 Cal.3d at p. 259.)

There is no sufficient reason to believe that the federal and state provisions are coterminous. Indeed, article I, section 24, of the state instrument declares: "Rights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution."

The framers of the California Constitution of 1879—our present state charter—derived their ex post facto clause from the Constitution of 1849—our original organic law. (Compare Cal. Const. of 1879, art. I, § 16, reprinted in 1 Swindler, Sources and Documents of United States Constitutions (1973) p. 471 (hereafter 1 Swindler), with Cal. Const. of 1849, art. I, § 16, reprinted in 1 Swindler, *supra*, at p. 448.) The framers of the Constitution of 1849, in turn, evidently derived their clause from previously adopted constitutions of sister states. (See generally Fritz, *More Than "Shreds and Patches": California's First Bill of Rights* (1989) 17 Hastings Const. L.Q. 13, 16-20.)

To be sure, in seeking the original understanding of the ex post facto clause of the California Constitution, we cannot neglect the 19th-century interpretation of its federal counterpart. There is no evidence that the original understanding of our provision was contrary to the 19th-century interpretation of the federal. Nor is there any evidence that the subsequent construction of the former was somehow "compelled" by the construction of the latter.

In spite of the foregoing, the majority evidently believe that the ex post facto clauses of the United States and California Constitutions are in fact of similar scope and content. But if, as they suggest, the framers of the state instruments simply adopted the federal provision as their own, they must have adopted it *as then interpreted.* (Cf. *State of California* ex rel. *Van de Kamp* v. *Texaco, Inc.* (1988) 46 Cal.3d 1147, 1162 [252 Cal.Rptr. 221, 762 P.2d 385] [making such an inference with regard to the Cartwright Act, Stats. 1907, ch. 530, pp. 984-987].) That, however, is the very fact they seek to disprove. Contrary to their implication, as noted above the 19th-century interpretation of the federal ex post facto clause traces its roots to the

beginning of the century, not its end. In *Youngblood*, the court held only that this interpetation *should not* have arisen—not that it *did not*.

The majority finally assert that *Smith*'s "administrative concerns" ground is absent essentially because *Youngblood* has simplified the law under the ex post facto clause of the United States Constitution. But as explained above, such recent simplification is irrelevant.

In any event, even if arguendo *People* v. *Smith, supra*, 34 Cal.3d 251, were not controlling, I believe that Proposition 115 must be applied only to crimes committed on or after its effective date. Indeed, the legal and factual background presented above virtually compels the conclusion.

It is axiomatic that when we set about to construe any law, our first and last obligation is to effectuate the intent of the lawgiver insofar as we are able to determine its object and to accomplish its goal. In many circumstances, that task is difficult to perform and uncertain of result. Here, it is not.

When those who drafted what would become Proposition 115 commenced their labor, they did so with notice of the presumption of prospectivity, which had recently been reaffirmed in *Evangelatos* v. *Superior Court, supra*, 44 Cal.3d 1188, and also with notice of the prospective application of Proposition 8, which had been adopted in *People* v. *Smith, supra*, 34 Cal.3d 251. In the typical case, we would have to be content to declare that the drafters had constructive knowledge of these matters. But in this case—in which the measure was "written" by "50 prosecutors" (Ballot Pamp., Proposed Stats. and Amends. to Cal. Const. with arguments to voters, Primary Elec. (June 5, 1990), rebuttal to argument against Prop. 115, p. 35, "written" and "prosecutors" emphasized in original)—we can confidently infer that those who framed the language had *actual* knowledge.

On completing their labor, the drafters of Proposition 115 had produced a measure that was similar to Proposition 8. As noted, the latter was a complex measure containing several provisions, some substantive, some procedural, and some both. The former is an even more complex measure containing more than three times as many provisions, many substantive, many procedural, and many both.

In view of these facts, the following conclusions are practically inescapable.

First, it must be presumed that Proposition 115 was intended to operate prospectively, specifically, only to crimes committed on or after its effective date.

Second, this presumption can be rebutted only if Proposition 115 contains "an express retroactivity provision" or if "it is very clear from extrinsic sources" that retroactivity was indeed intended. (*Evangelatos* v. *Superior Court, supra,* 44 Cal.3d at p. 1209.)

Third and final, the presumption is in fact *not* rebutted: Proposition 115 does not contain any express retroactivity provision, and the extrinsic sources do not reveal—clearly or otherwise—any intent in that regard.

Again, the majority are of the opposite view. To be sure, they recognize that the presumption of prospectivity operates and concede that it is not rebutted. But they then go on to state in substance that the "prospective/retroactive" distinction turns solely on whether the legal consequences of past conduct are changed, and that the application of a procedural provision to proceedings on or after its effective date is ipso facto prospective.

The majority's discussion, however, does not meet the analysis of intent presented above. Therefore, even if it were sound, it would nevertheless be insufficient.

But the fact is that the majority's discussion is simply not sound. Both of the premises on which it is based are unsupported.

It is not the case that the "prospective/retroactive" distinction turns solely on whether the legal consequences of past conduct are changed. If it did, prospectivity would be reducible to the ex post facto prohibition—and would therefore be nothing in itself. The majority are surely right in stating that a change in the legal consequences of past conduct is a *sufficient* condition of retroactivity. But they are just as surely wrong in implying that such a change is a *necessary* condition. "Every *ex post facto* law must necessarily be retrospective; but every retrospective law is not an *ex post facto* law . . . ." (*Calder* v. *Bull, supra,* 3 U.S. (3 Dall.) at p. 390 [1 L.Ed. at p. 650] (lead opn. of Chase, J.).)

Neither is it the case that the application of a procedural provision to proceedings on or after its effective date is ipso facto prospective. Indeed, settled law is to the contrary. (See *People* v. *Hayes, supra,* 49 Cal.3d at p. 1274; *Evangelatos* v. *Superior Court, supra,* 44 Cal.3d at pp. 1205-1206; *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d at pp. 393-394.)

The text of *Aetna Casualty,* which is the leading authority on this point, undermines the majority's premise. I quote it below in extenso.

"It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent. [Citations.] It is contended . . . that this rule of statutory construction has no application to procedural statutes . . . .

"*Davis & McMillan* v. *Industrial Acc. Com.*, [(1926) 198 Cal. 631] at page 638 [246 P. 1046, 46 A.L.R. 1095], contains language . . . to the effect that the presumption against retrospective construction does not apply to statutes relating merely to remedies and modes of procedure. [Citation.] A different theory is offered to reach the same result in *Morris* v. *Pacific Electric Ry. Co.* [(1935)] 2 Cal.2d 764, 768 [43 P.2d 276], wherein this court stated that procedural changes 'operate on existing causes of action and defenses, and it is a misnomer to designate them as having retrospective effect.' (See, also, *Estate of Patterson* [(1909)] 155 Cal. 626, 638; [citation].) In other words, procedural statutes may become operative only when and if the procedure or remedy is invoked, and if the trial postdates the enactment, the statute operates in the future regardless of the time of occurrence of the events giving rise to the cause of action. [Citation.] In such cases the statutory changes are said to apply not because they constitute an exception to the general rule of statutory construction, but because they are not in fact retrospective. There is then no problem as to whether the Legislature intended the changes to operate retroactively.

"*This reasoning, however, assumes a clear-cut distinction between purely 'procedural' and purely 'substantive' legislation. In truth, the distinction relates not so much to the form of the statute as to its effects.* If substantial changes are made, even in a statute which might ordinarily be classified as procedural, the operation on existing rights would be retroactive because the legal effects of past events would be changed, and the statute will be construed to operate only in futuro unless the legislative intent to the contrary clearly appears." (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.*, *supra*, 30 Cal.2d at pp. 393-394, italics added.)

Not only does the text from *Aetna Casualty* quoted above undermine the majority's premise that the application of a procedural provision to proceedings on or after its effective date is ipso facto prospective, so too does the reasoning and result in *People* v. *Hayes, supra,* 49 Cal.3d 1260. There, we squarely held that the application of such a provision to such proceedings could be—and under the relevant facts actually was—"retroactive." (*Id.* at p. 1274.)[1]

---

[1] The pertinent discussion in *People* v. *Hayes, supra,* 49 Cal.3d at page 1274, is as follows.

"A new statute is generally presumed to operate prospectively absent an express declaration of retroactivity or a clear and compelling implication that the Legislature intended

In an attempt to support their position, the majority quote from *Aetna Casualty*. The language they set out, however, does not state the court's own view—but instead that of one of the parties, which the court proceeds to reject. (See *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d at pp. 393-394.) They also rely on *People* v. *Hayes, supra,* 49 Cal.3d 1260, but miss the point of that case. Finally, they cite *Estate of Patterson* (1909) 155 Cal. 626 [102 P. 941]; *Morris* v. *Pacific Electric Ry. Co.* (1935) 2 Cal.2d 764 [43 P.2d 276]; *Olivas* v. *Weiner* (1954) 127 Cal.App.2d 597 [274 P.2d 476]; *Strauch* v. *Superior Court* (1980) 107 Cal.App.3d 45 [165 Cal.Rptr. 552]; *Andrus* v. *Municipal Court* (1983) 143 Cal.App.3d 1041 [192 Cal.Rptr. 341]; and *Republic Corp.* v. *Superior Court* (1984) 160 Cal.App.3d 1253 [207 Cal.Rptr. 241]. This court's old decisions in *Estate of Patterson* and *Morris* are of no effect. They were impliedly but clearly disapproved in *Aetna Casualty* in the above quoted text. Of less effect still are *Olivas, Strauch, Andrus,* and *Republic Corp.* To the extent they are inconsistent with *Aetna Casualty* —of which, inexplicably, they take no notice—they are obviously without force.

## III

For all the reasons stated above, I conclude that Proposition 115 applies only to crimes committed on or after its effective date.

I would therefore discharge the alternative writ, vacate the stay, and reverse the order of the Court of Appeal with directions to cause the issuance of a peremptory writ as prayed.

**BROUSSARD, J.**—I dissent for the reasons stated by Justice Mosk in part II of his dissenting opinion.

I must also dissent for an additional reason. It is manifestly unfair for the majority to change the rules after the votes are in. In *People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149], we established that multi-faceted criminal law reform initiatives would be applied only to crimes committed on or after the effective date of the initiative. There is no ambiguity, uncertainty or confusion as to the application of the *Smith* rule to Proposition 115.

---

otherwise. (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1206-1209.) We find nothing to overcome that presumption in this case.

". . . The prehypnotic evidence in question here predates the statute by several years . . . . It would be manifestly unfair to apply the regulatory provisions of [Evidence Code] section 795 to retrial of this case . . . . To invoke [Evidence Code] section 795 to exclude such evidence on retrial would be tantamount to giving the statute retroactive effect."

Our *Smith* decision in effect told the proponents and the opponents of Proposition 115 that its provisions would apply prospectively and would not apply to crimes committed prior to its effective date. More importantly, we in effect told the voters that they need not consider whether some provisions might be applied to pending matters and, if so, the fairness of such application.

We break faith with the voters when we repudiate the *Smith* rule and apply new rules after the voters have adopted the initiative.

We must presume that the voters fully understood that the provisions of Proposition 115 would not apply to crimes committed before its effective date. Certainly the drafters so understood. That understanding is repudiated by today's decision.

Many people object to changing rules in the midst of the game. But all should object to changing the rules after the game is over—after the votes are in.