Filed 2/28/23  P. v. Allen CA3
Opinion on transfer from Supreme Court

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANDRE MARCUS ALLEN,<br><br>Defendant and Appellant. | C093465<br><br>(Super. Ct. No. 05F03498)<br><br>OPINION ON TRANSFER |

This case returns to us on transfer with directions from our Supreme Court.  A jury found defendant Andre Marcus Allen guilty of first degree murder and second degree robbery in 2006.  The jury also found true an attempted robbery-murder special circumstance for the murder.  Defendant recently petitioned the trial court for resentencing under what is now Penal Code section 1172.6[1] based on changes made to the felony-murder rule by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437).  The trial court denied defendant's petition, finding the record established

---

[1]     Undesignated statutory references are to the Penal Code.

1

defendant was ineligible for resentencing because the jury found true the special circumstance for the murder. On appeal, defendant argues the trial court erred in relying on the special circumstance finding to disqualify him for relief. We disagreed in our original opinion filed March 17, 2022, and we affirmed the order.

Defendant petitioned our Supreme Court for review; that court has now directed us to reconsider the matter in light of *People v. Strong* (2022) 13 Cal.5th 698. Having done so, we accept the People's concession that the trial court's order denying the petition must be reversed and the matter remanded for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

A jury found defendant guilty of first degree murder (§ 187, subd. (a)) and second degree robbery (§ 211). As to the murder count, the jury found true the special circumstance allegation that the murder was committed during the commission or attempted commission of a robbery (§ 190.2, subd. (a)(17)). The jury found not true the allegation that defendant had intentionally and personally used a firearm in the commission of each offense (§ 12022.53, subd. (d)). The trial court sentenced defendant to life without the possibility of parole for first degree murder and stayed his sentence on the robbery conviction pursuant to section 654. Following a direct appeal, this court struck an inapplicable parole revocation restitution fine but otherwise affirmed the judgment in July 2008. (*People v. Coleman* (July 24, 2008, C053684) [nonpub. opn.].)

In our opinion on direct appeal, we summarized the incident resulting in these convictions as follows:

"On December 12, 2004, Dwayne Harvey was shot and killed while sitting in his parked car at Fourth Avenue Park in Sacramento. He was shot nine times by two different weapons—a .40-caliber semiautomatic handgun and a .38-caliber revolver. Shell casings or bullets from each weapon were recovered from Harvey's body and his car.

2

"*Prosecution's case*

"One of the prosecution's main witnesses was Sammy Anderson, a friend of both defendants who pleaded guilty to being an accessory to murder (§ 32) in return for his truthful testimony and a one-year jail sentence. According to Anderson, on the night of the murder, Anderson, Coleman, and Allen went to the Fourth Avenue Park to consummate a drug deal that Coleman had arranged with the victim Harvey. It was Coleman's idea to kill Harvey. While waiting for Harvey to arrive, Anderson decided to leave and was walking away from the park when Harvey's car pulled up. Anderson saw Allen shoot Harvey from outside of the car, near the passenger door, and after a pause, heard more rounds of gunfire. Anderson did not see Coleman with a gun that night, but was with Coleman the next day in the same park when Coleman picked up a gun from the grass and hid it in a car parked on the street.

"Testimony from eyewitnesses revealed that one of the defendants was seen searching Harvey's pockets and car after the shooting, and was holding a black revolver in his hand. The person searching Harvey was wearing a long, black coat with black pants, which matched a description of what Coleman was wearing the night of the shooting. The other man had on a black coat with fur trim on the hood, which matched a description of what Allen was wearing on the night of the shooting. One witness said that two men walked up to Harvey's car, and then he heard two rounds of different sounding shots. Two witnesses also testified that Allen made statements to the effect that he shot Harvey.

"*Defense case*

"Defendant Coleman testified in his own defense. He stated that on the night of the shooting, he called Harvey to buy crack cocaine and arranged to meet him at the park with Allen and Anderson. As they were waiting for Harvey, Coleman overheard Allen whisper to Anderson that 'he was going to do the dude' but did not see Allen carrying a gun and did not believe what Allen said. When Harvey's car arrived, Anderson was

3

walking away. Allen approached the car and Coleman followed behind him. Allen walked to the passenger side of the car, reached into the window, and fired shots into the car. After firing about five shots, Coleman saw Allen move to the front of the car and begin firing again with what sounded like a different gun. Coleman insisted that at no time did he have a gun. When Allen ran away, Coleman opened the driver's door and pulled Harvey out of the car. He decided to look for drugs or money in the vicinity. Finding none, Coleman took Harvey's cell phone.

"Defendant Allen testified that Coleman was carrying a black revolver with him that evening when they went to meet Harvey. When Harvey arrived at the park, Coleman walked up to the car, while Allen stayed behind. Allen heard three gunshots, and then heard more gunshots as he ran away from the park. He knew that Coleman intended to rob Harvey that night." (*People v. Coleman, supra*, C053684.)

On January 9, 2019, defendant filed a petition in the trial court to vacate his first degree murder conviction under what is now section 1172.6, alleging he could not now be convicted of murder because of the changes made to sections 188 and 189. The petition asserted a "complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine." Defendant also declared that "[a]t trial, [he] was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine." He declared that he was not the actual killer or a major participant in the felony. The trial court appointed counsel for defendant.

The district attorney filed a responsive pleading, moving to dismiss the petition on the grounds that the statute is unconstitutional and for failure of defendant to make a prima facie showing of eligibility. Defense counsel filed two replies. In a written order, the trial court denied defendant relief on the ground he had not made a prima facie showing of eligibility.

4

As the trial court observed, we affirmed the conviction, special circumstance finding, and sentence in an unpublished opinion in 2008. The court found defendant was ineligible for relief under what is now section 1172.6 because the jury had found the robbery-murder special circumstance true. In response to appointed counsel's argument regarding the effect of the Supreme Court decisions in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 on the robbery-murder special-circumstance finding, the trial court explained that it was "of the view that [section] 1170.95 is not the proper forum for determining the sufficiency of the evidence of the special circumstance finding in light of *Banks* and *Clark*." The court reasoned that defendant would first need to seek collateral relief in a habeas corpus proceeding.

The trial court then discussed the evidence, as summarized in this court's opinion on direct appeal, reasoning in the alternative that the evidence was still sufficient to support the special circumstance finding under *Banks/Clark*. In discussing the evidence, the court proposed a scenario in which the jury may have found the section 12022.53, subdivision (d) firearm enhancement not true, but codefendant Coleman's section 12022.53, subdivision (d) firearm enhancement true, to wit, that only Coleman's shot was the fatal shot. The court then concluded: "[T]here was sufficient evidence for a jury to find beyond a reasonable doubt that defendant . . . fired the first shots with intent to kill, thereby satisfying the mens rea required for a robbery-murder special circumstance, and such a conclusion is not precluded by the jury's not true finding on [defendant's section] 12022.53[, subdivision] (d) gun enhancement, which required a finding of proximately causing great bodily or death by the firing of the gun. That renders *Banks* and *Clark* irrelevant in this case."

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant originally argued the trial court erred in denying his petition for resentencing. He argued then, and now contends with the benefit of *Strong*, that the court

5

erred in relying on the jury's special circumstance finding to establish he was a major participant who acted with reckless indifference to human life because our Supreme Court clarified the special circumstances analysis after his conviction in *People v. Banks, supra*, 61 Cal.4th 788 and *People v. Clark, supra*, 63 Cal.4th 522. In supplemental briefing, the People now agree.

The Legislature enacted and the Governor signed Senate Bill 1437, effective January 1, 2019 (Stats. 2018, ch. 1015, § 4), determining that the change in law was " 'necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270, 275.) As pertinent here, Senate Bill 1437 added what is now section 1172.6, which permits a person convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the murder conviction and resentence the person on any remaining counts if, among other things, the petitioner could not now be convicted of first or second degree murder due to the change in the law. (§ 1172.6, subd. (a).)

Section 190.2, subdivision (d) provides that, for the purposes of those special circumstances based on the enumerated felonies in paragraph (17) of subdivision (a), which include robbery, an aider and abettor must have been a "major participant" and have acted "with reckless indifference to human life." (§ 190.2, subd. (d); *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 298.) Thus, on its face, a special circumstance finding satisfies the requirements for accomplice murder liability even after Senate Bill 1437. (§ 189, subd. (e).)

Since defendant's conviction, however, the Supreme Court has refined the analysis for who qualifies as a major participant acting with reckless indifference to human life in *Banks* and *Clark* and "construed section 190.2, subdivision (d) in a significantly different,

6

and narrower manner than courts had previously construed the statute." (*People v. Torres* (2020) 46 Cal.App.5th 1168, 1179, abrogated on other grounds in *People v. Lewis* (2021) 11 Cal.5th 952, 963.)

After we rejected defendant's claims in our previous opinion, our Supreme Court decided *Strong*, which concluded: "Findings issued by a jury before *Banks* and *Clark* do not preclude a defendant from making out a prima facie case for relief under Senate Bill 1437. This is true even if the trial evidence would have been sufficient to support the findings under *Banks* and *Clark*." (*People v. Strong, supra*, 13 Cal.5th at p. 710.) Here, the trial court concluded that the jury's pre-*Banks* and *Clark* findings precluded defendant from making a prima facie case. Because this conclusion does not survive *Strong*, we will reverse the trial court's order and remand for further proceedings consistent with this opinion.

DISPOSITION

The order denying defendant's section 1172.6 petition is reversed, and the cause is remanded with directions to conduct further proceedings consistent with *People v. Strong* (2022) 13 Cal.5th 698.

 

                                                                                          KRAUSE , J.

 

We concur:

 

RENNER , Acting P. J.

 

BOULWARE EURIE , J.

7