Filed 8/30/24  P. v. Lal CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C099077 |
| Plaintiff and Respondent, | (Super. Ct. No. 106513) |
| v. | |
| AZHAR LAL, | |
| Defendant and Appellant. | |

Defendant Azhar Lal appeals from an order denying his petition for resentencing under Penal Code section 1172.6 on a 1992 conviction for first degree murder.[1]  The trial court denied the petition without holding an evidentiary hearing on the ground defendant was ineligible for resentencing because he was the actual killer.  Defendant argues he stated a prima facie case for relief and he is entitled to an order to show cause because the

---

[1]  Undesignated statutory references are to the Penal Code.

1

record of conviction shows it is possible the jury found him guilty of murder under felony-murder principles without finding he was the actual killer. We affirm the trial court's order.

## I. BACKGROUND

*A.     Factual Background*

As context for the parties' arguments in this appeal, we provide the factual background taken from this court's opinion in defendant's direct appeal of his convictions. (*People v. Lal* (Mar. 24, 1994, C014958) [nonpub. opn.].) Our resolution of the present appeal is not dependent upon this factual account.

The victim, an elderly gentleman, lived on Helen Way in Sacramento and employed a maintenance company to do gardening work at his residence. The maintenance company was owned by defendant's father; defendant and his brother regularly mowed the victim's lawn.

Several weeks before the charged incident, defendant asked to borrow "some nylons" from a female friend, F.B. Defendant subsequently informed F.B. that he and another friend robbed the victim and showed F.B. three guns he had stolen from the victim's house.

On June 10, 1988, at approximately 1:30 a.m., defendant offered F.B.'s mother $20 for a ride to his "cousin's" house to collect some money owed. Following defendant's directions, F.B.'s mother, accompanied by two other women, drove defendant to Helen Way in Sacramento. F.B.'s mother and one of the other two women testified upon arriving at the victim's residence, defendant exited the vehicle and went toward the back of the house.

After waiting 30 minutes, the women approached the house, knocked on the front door and rang the doorbell. When no one responded, the women returned to F.B.'s mother's home. Between 4:30 and 5:00 a.m., defendant knocked on F.B.'s mother's door. Defendant told F.B.'s mother he had been fighting with his cousin, and he had two long,

2

deep cuts on his right leg and one on his left forearm.  F.B. arrived at her mother's residence shortly thereafter.

A police detective testified regarding his interview with F.B. on June 14, 1988, in which F.B. stated when she arrived at her mother's residence, defendant's clothing was covered with blood and he was wearing F.B.'s tennis shoes.[2]  He subsequently changed his clothes and wrapped the tennis shoes inside the bloody clothing.  Defendant then asked F.B. for a ride to his uncle's house.  Along the way, defendant asked to stop at an apartment complex, where he threw the bloody clothing into a dumpster and stopped by one of the apartments.  While waiting for defendant to return, F.B. retrieved her shoes from the dumpster and later gave them to police.  Defendant subsequently fled to London, England.

At approximately 7:00 a.m. on June 10, 1988, a co-worker arrived at Helen Way to give the victim a ride to work.  When no one responded, the co-worker notified the victim's son, and both men entered the back door of the house.  They found the victim dead on the kitchen floor; his jewelry and money clip were missing.  Bloodstains were found in the living room entryway, the master bedroom, and the kitchen, and blood was splattered on the kitchen walls and appliances.  The coroner testified the cause of death was a stab wound to the neck.

On one of the tennis shoes provided by F.B., experts found traces of two different types of blood, one consistent with defendant's blood type, and another consistent with the victim's blood type.  Defendant's fingerprints were found in the victim's bedroom, on the door frame between the hallway and dining room, and on a cigarette found on the floor of the laundry room.

---

[2]  At trial, F.B. testified she had no memory of the events of June 10, 1988.

3

At trial, defendant did not testify. Defendant's brother testified he and defendant were permitted to use the bathroom in the victim's house. Defendant also introduced psychiatric testimony F.B. suffered from various mental disorders, including hallucinations.

B.      *Procedural Background*

In 1992, the jury found defendant guilty of murder (count 1), burglary (count 2), and robbery (count 3). The jury found that the murder was in the first degree and defendant personally used a deadly weapon (a knife) in the commission of each of these crimes. The jury further found true the special circumstance allegations that the murder was committed while defendant was engaged in the commission of the robbery and the burglary.

In October 2022, defendant filed a petition for resentencing pursuant to section 1172.6. The trial court appointed counsel for defendant. The prosecution filed a response to the petition arguing defendant was ineligible for relief as a matter of law because the record of conviction established he was the actual killer. The response included this court's 1994 opinion on direct appeal, the jury instructions given, and an excerpt from defense counsel's closing argument at trial. Defendant filed a reply contending that a pre-*Banks/Clark*[3] special circumstance finding under 190.2, subdivision (a)(17) is not preclusive, the jury instructions did not require the jury to find he personally killed the victim, and the personal use of a deadly weapon enhancement did not prove he was the actual killer. In June 2023, the trial court held a hearing to determine whether defendant made a prima facie case for resentencing relief. Following the hearing, the court denied the petition on the basis that the record of conviction showed defendant was ineligible for relief under section 1172.6 as a matter of law because he was the actual killer.

---

[3]  (*People v. Clark* (2016) 63 Cal.4th 522; *People v. Banks* (2015) 61 Cal.4th 788.)

## II. DISCUSSION

*A.   Legal Background*

Effective January 1, 2019, "the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), which narrowed or eliminated certain forms of accomplice liability for murder.  (See Stats. 2018, ch. 1015.)  Among other things, Senate Bill 1437 barred the use of the natural and probable consequences doctrine to obtain a murder conviction."  (*People v. Curiel* (2023) 15 Cal.5th 433, 440.)  At defendant's trial, the jury was not instructed on this doctrine.  Defendant's arguments pertain to the fact that "Senate Bill 1437 significantly limited the scope of the felony-murder rule to effectuate the Legislature's declared intent 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citations.] . . . [S]ection 189, as amended, now limits liability under a felony-murder theory principally to 'actual killer[s]' (. . . § 189, subd. (e)(1)) and those who, 'with the intent to kill,' aid or abet 'the actual killer in the commission of murder in the first degree' (*id*., subd. (e)(2)).  Defendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of . . . Section 190.2'—that is, the statute defining the felony-murder special circumstance.  (. . . § 189, subd. (e)(3).)"  (*People v. Strong* (2022) 13 Cal.5th 698, 707-708.)

We pause briefly to clarify that defendant's trial did not involve the felony-murder special circumstance as it exists now.  In 1990, "the voters approved Proposition 115, which made substantive changes in felony-murder special-circumstances provisions, including amending subdivision (b) and adding subdivisions (c) and (d) to section 190.2."  (*People v. Cleveland* (2004) 32 Cal.4th 704, 751.)  "Before these amendments, for a felony-murder special circumstance to apply, the defendant had to either be the actual

5

killer or intend to kill." (*Id.* at p. 752.) Following approval of Proposition 115, "a person other than the actual killer is subject to the death penalty or life without parole if that person was a major participant in the underlying felony . . . and *either* intended to kill *or* acted with reckless indifference to human life." (*Ibid.*) These amendments to Proposition 115 could only be applied to prosecutions of crimes committed on or after June 6, 1990. (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 298.) Thus, they did not apply to defendant. For the felony murder special circumstance to apply to him, he had to be either the actual killer or intend to kill.

"Senate Bill 1437 also created a procedural mechanism for those convicted of murder under prior law to seek retroactive relief. [Citations.] Under section 1172.6, the process begins with the filing of a petition declaring that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189' made by Senate Bill 1437. (§ 1172.6, subd. (a)(3).) The trial court then reviews the petition to determine whether a prima facie showing has been made that the petitioner is entitled to relief. (*Id.*, subd. (c).) 'If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.]' [Citation.] Otherwise, the court must issue an order to show cause (§ 1172.6, subd. (c)) and hold an evidentiary hearing at which the prosecution bears the burden 'to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under the law as amended by Senate Bill 1437 (§ 1172.6, subd. (d)(3))." (*People v. Wilson* (2023) 14 Cal.5th 839, 869, fn. omitted.) "Accordingly, a court may deny the petition at the prima facie stage if the record of conviction conclusively establishes that the petitioner was convicted on a theory not affected by Senate Bill No. 1437." (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 931.)

"We independently review a trial court's determination on whether a petitioner has made a prima facie showing." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52 (*Harden*).) Like the trial court, in reviewing the record of conviction, we do not "engage

6

in 'factfinding involving the weighing of evidence.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 972.)

B.       *The Record of Conviction Establishes Defendant Is Ineligible for Relief*

Defendant argues he stated a prima facie case for relief and he is entitled to an order to show cause because the record of conviction shows it is possible the jury found him guilty of murder under felony-murder principles without finding he was the actual killer.  He is incorrect.  The record of conviction includes the instructions to the jury as well as their ultimate findings.  (*Harden, supra*, 81 Cal.App.5th at pp. 52-53.)  The jury was instructed defendant was accused in count 1 of having committed murder.  The jury was instructed on malice aforethought and felony murder with CALJIC No. 8.10 that, as relevant here, "[e]very person who unlawfully *kills* a human being with malice aforethought or during the commission of a burglary or a robbery is guilty of the crime of murder."  (Italics added.)  No instructions were given on aiding and abetting.  The jury was instructed that murder is classified into two degrees, and if it found defendant guilty of murder, it had to determine and state in its verdict whether it found the murder to be of the first or second degree.  The jury was instructed with CALJIC No. 8.21 that "[t]he unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs during the commission of the crime of burglary or robbery is murder in the first degree when the perpetrator had the specific intent to commit such crime."  In *Harden*, the jury was also instructed with the same language from CALJIC Nos. 8.10 and 8.21 and found the defendant guilty of murder.  (*Harden, supra*, at pp. 52-55, 58.)  The appellate court explained that CALJIC No. 8.10 " 'tells the jury that "the person who unlawfully kills" is guilty of murder.  In common understanding, this would refer to the person who inflicted the fatal injury.' " (*Harden, supra*, at p. 55.)  Because the jury was given no alternative definition of murder, the court held the defendant's "murder conviction necessarily means the jury determined she actually killed [the victim]." (*Ibid*.)  The same is true here.  Defendant relies on *People v. Lopez* (2022) 78 Cal.App.5th 1, which, as the

7

*Harden* court explained in detail, involved materially different CALCRIM instructions that asked only whether the defendant committed an act that *caused* the death. (*Harden, supra*, at pp. 57-58.) The jury instructions in this case did not provide a similar path to convict defendant without finding he was the actual killer. (See *Lopez, supra*, at p. 20 ["The jury might have found defendant, though not the actual killer, participated somehow in the home invasion robbery, and the victim's death was the direct, natural, and probable consequence of an act committed in the course of his participation"].) The fact the jury was not asked to make an express finding defendant was the actual killer does not support an inference the jury could have found he was not the actual killer where there was no other theory of conviction under the court's instructions.

Defendant argues this case is distinguishable from *Harden, supra*, 81 Cal.App.5th 45 because: (1) he was not charged with personal infliction of great bodily injury; and (2) the jury was not instructed with CALJIC No. 8.80.1[4] that "[i]f you are satisfied beyond a reasonable doubt that *the defendant actually killed* a human being, you need not find that the defendant intended to kill in order to find the special circumstance to be true."[5] (See *Harden, supra*, at pp. 54-55.) But as *Harden* explains, instructing the jury with the exact wording of CALJIC No. 8.10 at issue here and no other definition of murder was by itself sufficient to reach the conclusion the jury necessarily determined

---

[4] CALJIC No. 8.80.1 was based on Proposition 115 and designed to be used instead of CALJIC No. 8.80 for murders that occurred after June 6, 1990. (See Com. to CALJIC No. 8.80 (5th ed. Jan. 1992 supp.) p. 87; Use Note to CALJIC No. 8.80.1 (5th ed. Jan. 1992 supp.) p. 89.) Nonetheless, the instructions contained similar bracketed language on this point.

[5] Elsewhere, defendant argues the trial court erred by removing a part of CALJIC No.8.81.17 that required the jury to find the murder was committed to carry out or advance the underlying felony of robbery and/or burglary. We need not address this argument because it has no relevance to our understanding of whether defendant was convicted of the underlying murder as an actual killer.

defendant was the actual killer when it convicted him of murder. (*Harden, supra*, at pp. 54-55; accord *People v. Bratton* (2023) 95 Cal.App.5th 1100, 1123.) Additionally, at the relevant time, instructions on intent to kill in connection with felony-murder special circumstances were " ' "required only when there [was] evidence from which the jury could find that the defendant was an accomplice rather than the actual killer." ' " (*People v. Young* (2005) 34 Cal.4th 1149, 1204.) Thus, the fact the jury was not instructed with any bracketed language that if it found defendant was the actual killer it need not find he had the intent to kill actually further proves defendant was tried and convicted as an actual killer. The trial court did not err in denying the petition at the prima facie stage because "the record of conviction conclusively establishes that the petitioner was convicted on a theory not affected by Senate Bill No. 1437." (*People v. Berry-Vierwinden, supra*, 97 Cal.App.5th at p. 931.)[6]

---

[6] Defendant argues the trial court erred by relying on additional information we have not considered in reaching our independent determination that defendant failed to make a prima facie showing for relief—a statement by defense counsel during closing argument that, "I do not argue that Mr. Lal was not the person who was in fact responsible for [the victim's] death," and the jury's true findings on the personal use of a knife and felony-murder special circumstances allegations. In light of our conclusion, we need not consider whether this statement or these additional findings *also* rendered defendant ineligible for relief or whether, in making its determination, the trial court improperly engaged in factfinding or the weighing of evidence or relied on inadmissible evidence by considering any of this information.

## III.  DISPOSITION

The order denying defendant's petition for resentencing is affirmed.


/S/

_____

RENNER, J.


We concur:


/S/

_____

MAURO, Acting P. J.


/S/

_____

FEINBERG, J.