Filed 3/26/25; Modified and Certified for Pub. 4/17/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B330707 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A918235) |
| v. | |
| ARTHUR LEE HENDERSON, | |
| Defendant and Appellant. | |

———————————

APPEAL from a judgment of the Superior Court of Los Angeles County, Nicole C. Bershon, Judge. Affirmed with directions.

Mary Jo Strnad, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Nicholas J. Webster and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Arthur Lee Henderson appeals from the judgment entered after the superior court granted his petition for resentencing under Penal Code section 1170.95 (now section 1172.6)[1] with respect to his attempted murder conviction and resentenced him on his remaining convictions for murder (with a felony-murder special-circumstance finding) and attempted robbery. The court resentenced Henderson to an aggregate state prison term of life without the possibility of parole (LWOP), concluding that under section 1385.1 it lacked discretion to strike the felony-murder special circumstance.

On appeal, Henderson contends the superior court's application of section 1385.1 violated the ex post facto clauses of the California and United States Constitutions because his crime was committed several years before section 1385.1 was enacted, at a time when the court had discretion to dismiss a special circumstance. Because Henderson's sentence imposed at his 2023 resentencing was reduced from his initial sentence based on ameliorative changes to the law that were not available at the time of his initial sentencing, and his new sentence was no more severe than the punishment the law prescribed at the time of his crimes, application of section 1385.1 in 2023 to limit the court's discretion to strike the robbery-murder special circumstance did not violate the constitutional prohibitions against ex post facto laws.

Henderson also requests we remand for the superior court to reconsider his petition based on the Supreme Court's recent decision in *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*) that a

---

[1] All statutory references are to the Penal Code.

2

jury's finding of intent to kill in the context of a true finding on a special circumstance may in certain cases not render a defendant ineligible for resentencing where the jury was instructed on the natural and probable consequences doctrine. Henderson argues the holding in *Curiel* constitutes a significant change in the law that supports an exception to the law of the case doctrine. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Evidence at Trial*

We described the 1986 killing of Kenneth Fields and the shooting of David Davis during an attempted residential robbery in *People v. Elgin* (Sept. 21, 1989, B033856) (nonpub. opn.) (*Henderson I*). On the evening of December 7, 1986 Davis and Fields were in Davis's kitchen when Henderson came to the door and said his truck had broken down in the street. Davis knew Henderson well, and earlier that day Davis had shown Henderson $900 that he was carrying. Davis let Henderson into his home, but Henderson left shortly thereafter, saying he needed to check on his truck. Davis left the exterior security door open so Henderson could return. About 30 to 60 seconds later Davis heard footsteps, and Ceylon Elgin appeared in the kitchen doorway wearing a ski mask. Davis recognized Elgin immediately based on Elgin's movements and gait. Elgin pointed a revolver directly at Davis and demanded, "Give me the money." Davis wrestled with Elgin to take the gun away, was hit on the head, and fell to the floor unconscious.

Davis regained consciousness after about 30 seconds but remained on the floor with his eyes closed, pretending to be dead.

He heard gunshots and two or more people running through his house. While he was still on the floor, Davis heard in Henderson's voice, "Shoot him in the head," or "Shoot them in the head."[2] Another voice Davis did not recognize asked, "Where is it at?" Davis had about $900 in his pants pockets, but no one looked through his pockets. When Davis was sure the men left, he got up and examined Fields, who was lying by the kitchen sink. Fields had been shot in the chest; Davis had been shot in the arm. Both men were taken to the hospital. Fields died.

Davis later identified Henderson and Elgin from photographs. Davis was positive Elgin was the man in the ski mask and that Henderson had made the statement about shooting "him" or "them" in the head. About two weeks later, Henderson's brother-in-law told the police he was at Henderson's home when he overheard Henderson and Elgin talk about a shooting. Elgin said he had done the shooting; the witness could not recall what Henderson said.

---

[2] Davis gave a statement to police in the hospital that differed somewhat from his trial testimony: He told police Henderson came to Davis's home saying he had run out of gas, and while Henderson was using Davis's telephone, another person confronted Davis in the kitchen and pointed a revolver at him, saying, "Give me the money, motherfucker, or I'll kill you." After the gunshots, Davis heard Henderson tell the second person to "[s]hoot them in the head" and "[m]ake sure they are dead."

B.    *Jury Instructions, Conviction, and Sentence*[3]

The trial court instructed the jury with CALJIC No. 3.01 on aider and abettor liability.  The court also instructed the jury with CALJIC No. 3.00 on the natural and probable consequences doctrine.  The court further instructed with CALJIC No. 8.21 on the felony-murder rule that "[t]he unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs as a result of the commission of or attempt to commit the crime of [r]obbery, and where there was in the mind of the perpetrator the specific intent to commit such crime, is murder of the first degree."  The court did not instruct the jury that Henderson had to be a major participant acting with reckless indifference to human life.

The trial court also instructed the jury with CALJIC No. 8.81.17 that to prove the felony-murder special circumstance that the defendant committed a murder in the commission of robbery or attempted robbery, it must be proved "[1] that the murder was committed while the defendant was engaged in or was an accomplice in the commission or attempted commission of a robbery"; "[2] that the defendant intended to kill a human being or intended to aid another in the killing of a human being"; and "[3] that the murder was committed in order to carry out or advance the commission of the crime of robbery."  The court gave the introductory instruction on special circumstances

---

[3]    We construe the People's August 15, 2024 request for judicial notice as a request to augment the record on appeal.  We grant the request and augment the record to include the reporter's transcript filed in *Henderson I* and the clerk's transcript filed in *People v. Henderson* (Dec. 10, 2021, B309677) (nonpub. opn.).

(CALJIC No. 8.80), which likewise stated, "If defendant was an aider and abettor but not the actual killer, it must be proved beyond a reasonable doubt that he intended to aid in the killing of a human being before you are permitted to find the alleged special circumstance of first degree murder to be true. . . ."

The jury convicted Henderson and Elgin of the first degree murder of Fields (§ 187, subd. (a); count 1); the attempted murder of Davis (§§ 187, subd. (a), 664; count 2); and attempted robbery in an inhabited dwelling (former § 213.5, § 664; count 3). The jury also found true as to both defendants the special circumstance that the murder was committed during the course of an attempted robbery. (§ 190.2, former subd. (a)(17).) On each count, the jury found true as to both defendants that a principal was armed with a firearm (§ 12022, subd. (a)) and as to Elgin, that he personally used a firearm (§ 12022.5).

The trial court sentenced Henderson on the murder count to life without the possibility of parole, plus one year for the firearm enhancement. The court imposed a consecutive term of 10 years on the attempted murder count (the upper term of nine years, plus one year for the firearm enhancement). The court imposed a 30-month term for attempted robbery, plus one year for the firearm enhancement, to run concurrent to the sentences on the other counts. We affirmed, rejecting Henderson's contention the evidence was insufficient to support a finding of first degree murder with a special circumstance enhancement. (*Henderson I, supra*, B033856).

C.    *Petition for Resentencing and* Henderson II
On January 11, 2019 Henderson, representing himself, filed a form petition for resentencing under former

section 1170.95. In his petition, Henderson declared he was convicted of murder pursuant to the felony murder rule or natural and probable consequences doctrine, and he could not now be convicted of murder because of changes to sections 188 and 189 effective January 1, 2019. He also checked the box on the form stating he was not the actual killer and did not act with the intent to kill.[4] The superior court appointed counsel to represent Henderson, and after multiple rounds of briefing, the court denied his petition without ordering an evidentiary hearing. Henderson appealed.

In *People v. Henderson* (Dec. 10, 2021, B309677) (nonpub. opn.) (*Henderson II*), we held the superior court correctly found Henderson ineligible for relief under section 1172.6 as to his murder conviction. We explained that in finding the felony-murder special circumstance true, the jury necessarily found Henderson intended to kill Fields and aided and abetted the killing. We observed that the trial court had instructed the jury with CALJIC No. 8.81.17 based on then-applicable law that to prove the felony-murder special circumstance, it must be proved, among other elements, "[t]hat the defendant intended to kill a human being or intended to aid another in the killing of a human being."

However, we reversed the order denying Henderson's resentencing petition with respect to his attempted murder conviction in light of recent amendments by Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2) that, among other things, applied section 1172.6 to convictions for voluntary

---

[4]     The People do not dispute that Henderson was not the actual killer of Fields.

7

manslaughter and attempted murder. Henderson argued, the People conceded, and we agreed the jury relied on the natural and probable consequences doctrine in convicting him of the attempted murder of Davis. We remanded with directions for the superior court to determine whether Henderson made a prima facie showing he was entitled to relief under section 1172.6, and if he did to issue an order to show cause and set an evidentiary hearing.

D.     *Henderson's Resentencing*

On remand the parties submitted additional briefing, and the superior court set an evidentiary hearing on Henderson's petition with respect to his conviction for attempted murder. At the October 19, 2022 evidentiary hearing, the People relied on the trial transcript and argued that Henderson's command to Elgin to "shoot them in the head" or "shoot him in the head" after gunshots had been fired (i.e., after Fields and Davis had already been shot), showed Henderson intended that both victims be killed because the victims knew Henderson and could identify him. Henderson's attorney argued, among other things, that Davis's account was inconsistent and unreliable, and the fact no more shots were fired after Henderson's command meant it was not conclusively established that Henderson aided and abetted the shootings that had already taken place. The court found in light of the ambiguity in the timeline, the "paucity of evidence," and Davis's uncertainty whether Henderson said "shoot him" or "shoot them," the evidence could support an inference Henderson intended for Elgin to kill both men or an inference he intended only for Elgin to make sure Fields was dead. The court found there was not sufficient evidence to prove attempted murder

8

beyond a reasonable doubt, and Henderson was therefore entitled to resentencing. The court clarified that it had not analyzed the evidence with respect to Henderson's LWOP sentence for Fields's murder, stating, "I do believe . . . the jury got it right as to count 1. . . . [Henderson] harbored the intent to kill Mr. Fields, and that he did it in the commission of a robbery." The court ordered the parties to file supplemental briefs on resentencing.

In his supplemental brief Henderson urged the superior court on the murder count to exercise its discretion under section 1385 to strike the felony-murder special circumstance. Henderson had "been in custody since the mid-1980's, the [c]ourt has vacated the attempted murder conviction, the facts of the case [were] still murky, [and] the attempted murder count was closely connected in time and place . . . thereby casting enough of a pall over the murder's facts to justify, even compel, striking the special circumstance on grounds on lingering doubt." Further, Henderson argued, but for the LWOP sentence, Henderson would have "likely made parole by now, given the length of his incarceration alone and since he is not the actual killer."

In their opposition the People argued the superior court lacked discretion to strike a special circumstance pursuant to section 1385.1, which was enacted in 1992 and provided that a trial court may not strike a special circumstance finding on a first degree murder conviction notwithstanding the court's discretion to strike counts and enhancements under section 1385. Even if the superior court had discretion, the People argued, the court should decline to do so because at the 1988 sentencing hearing the trial court heard argument and exercised its discretion under section 1385 *not* to strike the jury's true finding on the special circumstance. In his reply, Henderson argued, as he does on

9

appeal, that application of section 1385.1 at his resentencing hearing would violate constitutional prohibitions against ex post facto laws.

At the May 19, 2023 resentencing hearing the superior court denied Henderson's request to strike the felony-murder special circumstance. The court stated it was "not sure the court even has" discretion to strike a special circumstance in light of section 1385.1, and there were good reasons to decline to strike the jury's finding. The court resentenced Henderson to LWOP on count 1 for the first degree murder of Fields. The court dismissed the firearm enhancements pursuant to section 1385, and on count 3 for attempted robbery the court resentenced Henderson to the middle term of two years, stayed under section 654.[5]

Henderson timely appealed.

## DISCUSSION

---

[5] The abstract of judgment is inconsistent with the superior court's oral pronouncement of judgment at the May 19, 2023 resentencing hearing and must be corrected. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [an appellate court may order "correction of abstracts of judgment that [do] not accurately reflect the oral judgments of sentencing courts"]; *People v. Whalum* (2020) 50 Cal.App.5th 1, 15 ["Where there is a discrepancy between the oral pronouncement of judgment and the abstract of judgment, the oral pronouncement controls."].) Specifically, the abstract of judgment should be corrected to reflect that the court dismissed count 2 for attempted murder and the firearm enhancements on counts 2 and 3; in addition, on count 1 for first degree murder, the court sentenced Henderson to LWOP (and not LWOP plus 25 years to life).

A.	*Senate Bill No. 1437 and Section 1172.6*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule.  (*People v. Arellano* (2024) 16 Cal.5th 457, 467-468; *Curiel, supra*, 15 Cal.5th at pp. 448-449; *People v. Strong* (2022) 13 Cal.5th 698, 707-708.)  Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule as set forth in section 189, subdivision (e).  (*Arellano*, at p. 468; *Curiel*, at p. 448; *People v. Reyes* (2023) 14 Cal.5th 981, 986.)  Section 189, subdivision (e), now requires the People to prove specific facts relating to the defendant's individual culpability: the defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, aided or assisted in the commission of murder in the first degree (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life as described in section 190.2, subdivision (d) (§ 189, subd. (e)(3)).  (*See Arellano*, at p. 468; *Curiel*, at p. 448; *People v. Wilson* (2023) 14 Cal.5th 839, 868-869.)

When the superior court grants a section 1172.6 petition, the defendant is entitled to a full resentencing.  (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425 ["the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant."]; *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["the resentencing court has jurisdiction to modify *every* aspect of the sentence, and not just the portion subjected to the

recall"]; see *People v. Trent* (2023) 96 Cal.App.5th 33, 44 [full resentencing rule applicable to resentencing under § 1172.6].) "'A full resentencing may involve the trial court's revisiting such decisions as the selection of a principal term, whether to stay a sentence, whether to impose an upper, middle, or lower term, and whether to impose concurrent or consecutive sentences.'" (*People v. Bautista-Castanon* (2023) 89 Cal.App.5th 922, 927; accord, *People v. Jones* (2022) 79 Cal.App.5th 37, 46-47.)

B.  *The Superior Court's Application of Section 1385.1 at Resentencing Did Not Violate Constitutional Prohibitions Against Ex Post Facto Laws*

Section 1385.1, enacted in 1990 as part of Proposition 115 (the Crime Victims Justice Reform Act), provides that "[n]otwithstanding section 1385," the trial court "shall not strike or dismiss any special circumstance . . . found by a jury or court as provided in [s]ections 190.1 to 190.5." (See *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 286 (*Tapia*).) The statute "'clearly and unmistakably prohibit[s]'" trial courts from striking a first-degree-murder special circumstance. (*People v. Ybarra* (2008) 166 Cal.App.4th 1069, 1093, disapproved on another ground in *People v. Gutierrez* (2014) 58 Cal.4th 1354; accord, *People v. Johnwell* (2004) 121 Cal.App.4th 1267, 1283.) However, the Supreme Court in *Tapia* held that section 1385.1 "may only be applied to prosecutions of crimes committed on or after June 6, 1990" because retroactive application of the statute "would change the legal consequences of the defendant's past conduct" and "likely violate the rule against ex post facto legislation." (*Tapia*, at pp. 298-299.)

12

Henderson contends the superior court's application of section 1385.1 at his 2023 resentencing to limit the court's discretion to strike the felony-murder special circumstance violated constitutional prohibitions against ex post facto laws.[6] Fields's murder was committed in 1986; Henderson was sentenced in 1988; and we affirmed the conviction and sentence in 1989. (*Henderson I, supra*, B033856.) It is beyond dispute the trial court had discretion to strike a special circumstance at the time of the murder, but the superior court's application of section 1385.1 at Henderson's 2023 resentencing under section 1172.6 did not violate constitutional prohibitions against ex post facto laws.

The ex post facto clauses in the United States and California Constitutions prohibit ""any statute [1] which punishes as a crime an act previously committed, which was innocent when done; [2] which makes more burdensome the punishment for a crime, after its commission, or [3] which deprives one charged with crime of any defense available according to law at the time when the act was committed . . . ."" (*Tapia, supra*, 53 Cal.3d at p. 294, quoting *Collins v. Youngblood* (1990) 497 U.S. 37, 42; see U.S. Const. art. I, § 10; Cal. Const.

---

[6]     As discussed, the superior court denied Henderson's request to strike the special circumstance, finding it was both unclear under section 1385.1 whether the court had discretion to strike it, and even if it did, it would not do so. Because we conclude application of section 1385.1 did not violate prohibitions on ex post facto laws, we do not reach whether it would have been an abuse of discretion for the court to decline to strike the special circumstance.

art. I, § 9.)[7] "The [United States] Supreme Court has identified 'two critical elements [that] must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.'" (*People v. Gonzales* (2021) 65 Cal.App.5th 1167, 1173 (*Gonzales*), quoting *Weaver v. Graham* (1981) 450 U.S. 24, 28-29; accord, *People v. Delgado* (2006) 140 Cal.App.4th 1157, 1164.) "[O]ne of the primary purposes of the ex post facto clause [is] to prevent unforeseeable punishment." (*People v. Snook* (1997) 16 Cal.4th 1210, 1221.)

In *People v. Hill* (2024) 100 Cal.App.5th 1055, 1067 (*Hill*), our colleagues in Division Two of the Second Appellate District recently concluded that resentencing under section 1172.6 on a theory of murder that was not recognized at the time of the original offense does not violate ex post facto principles. The court explained: "(1) It does not impose punishment for an act which was not punishable at the time it was committed; (2) It does not aggravate a crime or make it greater than it was when committed; [and] (3) It does not impose a greater punishment for a crime than when the crime was committed." (*Ibid*.) Moreover, "[s]ection 1172.6 does not apply any new law retroactively to make formerly innocent conduct criminal. Rather, it looks to whether a defendant could be convicted under current law despite the elimination of certain theories of murder that were

_____

[7] "We interpret the ex post facto clause of the California Constitution 'no differently than its federal counterpart.'" (*People v. Gonzales* (2021) 65 Cal.App.5th 1167, 1173, fn. 3, quoting *People v. Snook* (1997) 16 Cal.4th 1210, 1220; accord, *Tapia, supra*, 53 Cal.3d at pp. 295-296.)

14

available to the prosecution when the defendant was convicted before the enactment of Senate Bill No. 1437." (*Ibid.*)

The *Hill* court also observed that "courts have uniformly held the sentence modification procedure under section 1172.6 to constitute an act of legislative lenity, not a new criminal prosecution." (*Hill, supra*, 100 Cal.App.5th 1055, 1068 [listing cases]; accord, *Estrada v. Superior Court* (2023) 93 Cal.App.5th 915, 925 ["retroactive relief provided by Penal Code section 1172.6 "'is a legislative 'act of lenity' intended to give defendants serving otherwise final sentences the benefit of ameliorative changes to applicable criminal laws and does not result in a new trial or increased punishment'""]; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 588 ["A petition under [§ 1172.6] is not a criminal prosecution. [Citation.] It is the exact *opposite* of a criminal prosecution. A criminal prosecution can only hurt a defendant and can never help. The process here is the reverse: it can only help the defendant and can never hurt."].)

Because resentencing under section 1172.6 "cannot result in additional punishment and is a completely voluntary endeavor on defendant's behalf" (*People v. Njoku* (2023) 95 Cal.App.5th 27, 45; see *Hill, supra*, 100 Cal.App.5th at p. 1068), "[m]any constitutional protections that characterize burdensome criminal prosecutions do not apply in this ameliorative process." (*People v. Mitchell, supra*, 81 Cal.App.5th at pp. 588-589 [right to jury and double jeopardy concerns not implicated]; see *People v. Myles* (2021) 69 Cal.App.5th 688, 706 ["[b]ecause a sentence modification under [§ 1172.6] is an act of lenity and not a criminal trial, the wrongful admission of evidence does not implicate defendant's constitutional rights under the Fifth Amendment"]; *People v. James* (2021) 63 Cal.App.5th 604, 610 ["a

convicted person litigating a [§ 1172.6] petition does not enjoy the rights that the Sixth Amendment guarantees to criminal defendants who have not yet suffered a final conviction"].)

Thus, "when a murder conviction is vacated under section [1172.6], it does not violate ex post facto or due process principles for the court to retroactively apply a sentencing provision that is supported by the record of conviction when resentencing the defendant, as long as the new sentence is no more severe than the punishment assigned by law when the act to be punished occurred, and is not greater than the defendant's original sentence." (*Gonzales, supra*, 65 Cal.App.5th at p. 1174; accord, *Hill, supra*, 100 Cal.App.5th at pp. 1068-1069.)

*Gonzales, supra*, 65 Cal.App.5th 1167 is directly on point. There, the Court of Appeal considered, in the context of resentencing following the grant of a section 1172.6 petition, whether the superior court violated constitutional prohibitions against ex post facto laws by applying a gang enhancement under section 186.22, subdivision (d), that did not exist at the time of commission of the original offense to elevate the defendant's misdemeanor battery conviction to a felony, then sentencing the defendant to a three-year state prison term for the felony conviction. (*Gonzales*, at pp. 1171-1173.) The Court of Appeal concluded it did not violate ex post facto principles because the defendant was on notice "of the potential punishment for criminal acts at the time those acts were committed." (*Id*. at p. 1173.) The court reasoned that "the proper inquiry here is not what punishment was assigned to the crime of battery at the time defendant joined his fellow gang members in a fight against rival gang members. Rather, the inquiry is what punishment was assigned to the act of a gang member joining in a fight against

16

rival gang members in which one of those rivals is shot and killed. And in 1998, when defendant engaged in the fistfight at issue, the punishment assigned for that act was 15 years to life plus 25 years to life for second degree murder." (*Ibid*.)

In *Hill, supra*, 100 Cal.App.5th at page 1070, the Court of Appeal went a step further and held the superior court did not violate ex post facto principles in denying a section 1172.6 at the prima facie review stage where the record of conviction showed the defendants could be convicted on a currently viable theory of felony murder (kidnapping), even though that theory was not available at the time of the defendants' offense, which predated Proposition 115's amendments to section 189, subdivision (a). The court observed that the defendants' "ex post facto argument amounts to nothing more than a 'heads I win, tails you lose' proposition. There is no dispute that [the defendants] were validly convicted in 1992 under the law as it stood in 1992. There is also no question they can be validly convicted under current law in 2024. But [the defendants] claim they are entitled to acquittals by applying current law to invalidate the 1992 theory of conviction, while reserving the right to apply 1992 law to avoid upholding their convictions under current law. There is nothing in the text, legislative history, or stated intent of Senate Bill No. 1437 to support application of section 1172.6 in this manner." (*Hill*, at p. 1070.)

Here, as in *Gonzales* and *Hill*, the superior court applied a statute that did not exist at the time of Henderson's offense, and had the statute been later enacted and applied at the initial sentencing, it would have violated ex post facto principles. However, similar to the defendants in *Gonzales* and *Hill*, Henderson at the time of his 2023 resentencing stood to benefit

17

from ameliorative changes to the law that were not available at the time of his initial sentencing, including the dismissal of his attempted murder conviction and discretionary dismissal of the firearm enhancements. Henderson was validly sentenced to LWOP for first degree murder in 1988, and his initial aggregate sentence for first degree murder, attempted murder, and attempted robbery (with special circumstance and firearm enhancements) of LWOP plus 11 years was reduced after his 2023 resentencing to LWOP (for murder and attempted robbery). Henderson's "new sentence is no more severe than the punishment assigned by law when the act to be punished occurred, and is not greater than the defendant's original sentence"; therefore, the retroactive application of section 1385.1 did not offend ex post facto principles. (*Gonzales*, at p. 1174; accord, *Hill, supra*, 100 Cal.App.5th at pp. 1068-1069.)

Henderson does not cite any authority for the proposition that section 1172.6, in providing petitioning defendants resentencing relief, implicates ex post facto principles, and we are not aware of any. Instead, he relies heavily on *People v. Williams* (1981) 30 Cal.3d 470, 490, in which the Supreme Court held that notwithstanding mandatory language in sections 190 through 190.5, special-circumstance findings are similar to enhancements, and a trial judge has discretion to dismiss them under section 1385. But as the Supreme Court later recognized in *Tapia, supra*, 53 Cal.3d at page 298, footnote 17, the language in Proposition 115 adopting section 1385.1 "appear[ed] to be a direct response to our opinion in [*Williams*]," and the *Tapia* court held section 1385.1 was a valid restriction on a trial court's discretion, albeit prospectively. And, as discussed, the relevant issue here is not the imposition of increased criminal penalties

18

based on a retroactive application of section 1385.1, but whether the ameliorative resentencing provisions under section 1172.6 implicate ex post facto principles in the first place.  They do not.

C.    *The Law of the Case Doctrine Bars Reconsideration of the Prima Facie Denial of Henderson's Petition as to the Murder Conviction*

Henderson contends that although we previously affirmed the superior court's denial of his petition for resentencing at the prima facie review stage with respect to his murder conviction in *Henderson II, supra*, B309677, we should remand to the superior court to reconsider its ruling because in the years since our decision, the Supreme Court in *Curiel, supra*, 15 Cal.5th 433 significantly changed the law under section 1172.6 with respect to direct aider and abettor liability.  Henderson acknowledges that we decided the issue of the validity of his murder conviction under section 1172.6, but he asserts this case falls within the exception to the law of the case doctrine because there has been a significant intervening change in the law.  Regardless of whether *Curiel* may be considered a significant change in the law, which is far from clear, it did not change the long-established law on direct aider and abettor liability that renders Henderson ineligible for resentencing.  Thus, the law of the case doctrine bars reconsideration of Henderson's petition for resentencing as to his murder conviction.

Under the doctrine of the law of the case, ""[W]here, upon an appeal, the [reviewing] court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower

19

court and upon subsequent appeal and . . . in any subsequent suit for the same cause of action, and this [is true] although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular.'"" (*People v. Murtishaw* (2011) 51 Cal.4th 574, 589.)  However, "the doctrine will not be adhered to where its application will result in an unjust decision, e.g., where there has been a 'manifest misapplication of existing principles resulting in substantial injustice' [citation], or the controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations [citation].  The unjust decision exception does not apply when there is a mere disagreement with the prior appellate determination."  (*People v. Stanley* (1995) 10 Cal.4th 764, 787; see *People v. Jurado* (2006) 38 Cal.4th 72, 97 ["Because defendant has not shown that the Court of Appeal's decision rejecting his double jeopardy claim was a manifest misapplication of the law, that it resulted in substantial injustice, or that there has been an intervening change in the controlling law, the Court of Appeal's decision is the law of the case on that issue."].)

In *Curiel, supra*, 15 Cal.5th at pages 468 to 470 the Supreme Court held the jury's finding on a gang-murder special circumstance that the defendant intended to kill did not establish the defendant was ineligible for resentencing as a matter of law under section 1172.6 where the jury had been instructed on the natural and probable consequences doctrine.  In reaching this conclusion, the court relied on its previous decisions addressing direct aiding and abetting principles and held, "We have generally described the requisite mens rea for direct aiding and abetting as 'knowledge of the direct perpetrator's unlawful intent

20

and an intent to assist in achieving those unlawful ends.' [Citation.] In other words, the aider and abettor must have 'knowledge of the unlawful purpose of the perpetrator' and 'the intent or purpose of committing, encouraging, or facilitating' the commission of the offense." (*Curiel*, at p. 468, quoting *People v. Perez* (2005) 35 Cal.4th 1219, 1225 and *People v. Chiu* (2014) 59 Cal.4th 155, 167.)

As the court in *Curiel* explained, "Because the jury was instructed on the natural and probable consequences doctrine, the jury was required to find only that Curiel knew that [the direct perpetrator] intended to commit one of the underlying target offenses [disturbing the peace or carrying a concealed firearm by a gang member] and that Curiel intended to aid him in that offense, *not murder*. Nor was the jury required to find that the underlying target offenses, themselves, were dangerous to human life. While the jury separately found Curiel intended to kill, such an intent standing alone is insufficient to establish the requisite mens rea for aiding and abetting murder." (*Curiel, supra*, 15 Cal.5th at p. 468, italics added.) The court described this "scenario—where a defendant is liable for murder under the natural and probable consequences doctrine, and acts with malice aforethought, but is *not* liable as a direct aider and abettor—as 'quite narrow' and relevant only to a 'very small set of cases.'" (*Id.* at p. 470.)

As discussed, *Curiel* applied long-recognized concepts of direct aiding and abetting principles to the unique facts present there—where there was a finding of intent to kill in the context of the gang-murder special circumstance but the jury could have nonetheless convicted the defendant under the now-invalid natural and probable consequences doctrine. Accordingly, it is

21

the traditional principles of direct aiding and abetting liability set forth in *People v. Perez, supra*, 35 Cal.4th at page 1225 and *People v. Chiu, supra*, 59 Cal.4th at page 167, not *Curiel*, that make Henderson ineligible for relief.

Moreover, as discussed, current section 189, subdivision (e)(2), makes clear that "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder as a direct aider and abettor only if "[t]he person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree."  The jury here was instructed that in order to find the felony-murder special circumstance true, it had to find beyond a reasonable doubt that Henderson, if not the actual killer, "intended to aid in the killing of a human being" (CALJIC No. 8.80), the murder was "committed while [Henderson] was engaged in the commission or was an accomplice in the commission or attempted commission of a robbery," and the "murder was committed in order to carry out or advance the commission of the crime of robbery" (CALJIC No. 8.81.17.)

Therefore, unlike in *Curiel*, the jury's felony-murder special-circumstance finding in this case means the jury necessarily found beyond a reasonable doubt that Henderson intended to aid and abet Elgin in killing Fields in the course of and in furtherance of the attempted robbery of Davis's house. Because these findings remain a valid basis for conviction for felony murder under section 189, subdivision (e)(2), *Curiel* is inapposite.

22

## DISPOSITION

The May 19, 2023 judgment is affirmed. The superior court is directed to prepare a corrected abstract of judgment consistent with the court's May 19, 2023 oral pronouncement of judgment and this opinion. The superior court is ordered to forward a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

FEUER, J.

We concur:


MARTINEZ, P. J.



SEGAL, J.

23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B330707 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A918235) |
| v. | |
| ARTHUR LEE HENDERSON, | ORDER MODIFYING OPINION AND DENYING REHEARING, CERTIFYING OPINION FOR PULICATION |
| Defendant and Appellant. | |
| | [NO CHANGE IN APPEALLATE JUDGMENT) |

THE COURT:

It is ordered that the opinion filed on March 26, 2025 be modified as follows:

1.     On page 18, delete the words "and we are not aware of any" at the end of the first sentence of the first full paragraph, which states "Henderson does not cite any authority for the proposition that section 1172.6, in providing petitioning defendants resentencing relief, implicates ex post facto principles, and we are not aware of any," so the sentence reads:

"Henderson does not cite any authority for the proposition that section 1172.6, in providing petitioning defendants resentencing relief, implicates ex post facto principles."

In addition, add footnote 8 at the end of the sentence, with the following language, which will require renumbering of all subsequent footnotes:

[8.] In *People v. Nguyen* (Mar. 21, 2025, G062427) __ Cal.App.5th __ [2025 Cal.App. LEXIS 185, *14], Division Three of the Fourth District concluded section 1385.1 did not apply to the defendants' resentencing on their murder convictions (after the trial court vacated their attempted murder convictions under section 1172.6) because the murders were committed before the effective date of Proposition 115. In the People's April 10, 2025 petition for rehearing, the Attorney General stated that in light of *Nguyen*, he "will take the position in future cases that section 1385.1 does not apply at a section 1172.6 resentencing for murders committed prior to 1990." We disagree with our colleagues in *Nguyen*, who relied on *Tapia, supra*, 53 Cal.3d at page 298, without considering ex post facto principles or whether the reasoning in *Tapia* applies in the section 1172.6 resentencing context (in contrast to a pending criminal prosecution or other nonfinal judgment). We therefore deny the People's petition for rehearing.

2

2. Further, the opinion filed March 26, 2025 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the Sacramento County District Attorney's Office's request for publication pursuant to California Rules of Court, rule 8.1120(a) is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

Respondent's petition for rehearing is denied.

There is no change in the appellate judgment.

_____

MARTINEZ, P. J.        SEGAL, J.              FEUER, J.

3